**UNITED STATES of America ex rel Leodis SMART, Relator-Appellant,**

v.

**Frank J. PATE, Warden, Respondent-Appellee.**

**No. 13737.**

United States Court of Appeals Seventh Circuit.

June 13, 1963.

James T. Otis, Chicago, Ill., MacLeish, Spray, Price & Underwood, Chicago, Ill., of counsel, for appellant.

William C. Wines, Asst. Atty. Gen., Chicago, Ill., Edward A. Berman, Asst. Atty. Gen., of counsel, for appellee.

Before SCHNACKENBERG, KNOCH and SWYGERT, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

Pursuant to our grant of a certificate of probable cause, Leodis Smart, relator, has appealed from the district court's order of April 16, 1962, which dismissed his application for a writ of habeas cor-

---

pus, on motion of respondent, Frank J. Pate, warden of the Illinois State Penitentiary (Stateville Branch), filed pursuant to 28 U.S.C.A. § 2254.

The brief of able counsel, appointed by this court to represent Smart, focuses our attention specifically on Smart's allegation

"* * * that because of the loss or destruction, without his fault, of a material portion of the stenographic record of the trial hearing at which he was convicted, the State of Illinois without due process of law and by unlawful discrimination has denied him a full and fair appellate review of the trial proceedings. * * * "

The original *pro se* application for habeas corpus is a competent work consisting of 126 typewritten pages. It includes 52 pages of fine draftsmanship and briefing, and the remaining 74 pages consist of detailed reproductions of various court records.

Smart was tried in the Criminal Court of Cook County, Illinois, before a jury, in March 1950, on an indictment charging murder. He was represented by Attorney B. J. McNeal during his six-day trial, the proceedings of which were reported by three official shorthand reporters. One of them was Paul Brookins, who recorded the last day of the trial proceedings (March 13, 1950), which included testimony of witnesses, rulings on evidence, closing arguments of counsel and the court's instructions.

Following the entry of the verdict finding defendant guilty and fixing his punishment at life imprisonment, defendant's counsel moved for a new trial, which was, on March 27, 1950, denied. It was then that he was sentenced for the murder, the court ordering that the sentence should run concurrently with a sentence for the crime of rape in case No. 49–283.

Smart never filed any proceeding for direct review of his murder conviction by the Illinois Supreme Court. Instead, in November 1952 he filed in the trial court a post-conviction hearing petition, which he withdrew on February 25, 1953, and filed such an amended petition by court-appointed counsel, in July, 1953. He also filed a petition in the Criminal Court in October 1953, *in forma pauperis,* seeking a transcript at public expense.

Both the July 1953 amended post-conviction petition and the October 1953 petition were heard by the Criminal Court, counsel for the people having filed an answer to the amended petition, and the court on the state's motion denied both petitions on January 15, 1954.

On February 26, 1954, Smart filed a petition in the Illinois Supreme Court, seeking a writ of mandamus to compel the Criminal Court to furnish him with a copy of the proceedings at his original trial. The court denied the petition on March 18, 1954.

On June 9, 1954, Smart made a motion in the Illinois Supreme Court for leave to "file" a writ of error under the Post-Conviction Hearing Act. A writ of error was denied by that court on September 29, 1954. The court pointed out in its order that the post-conviction petition filed by Smart

"* * * charged that his constitutional rights were violated in the following respects:

"1—The State 'knowingly or unknowingly' introduced perjured testimony to convict him.

"2—His confession was obtained from him by physical force.

"3—The jury was permitted to separate during the trial over his objection."

Certiorari was denied by the United States Supreme Court, Smart v. Illinois, 349 U.S. 923, 75 S.Ct. 663, 99 L.Ed. 1254.

Taking cognizance of the decision on April 23, 1956, in Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891, the Illinois Supreme Court promulgated rule 65–1, § 101.65–1 ch. 110, Ill.R.S. (1961),

which gives effect in Illinois to the Griffin holding, as follows:

> "(2) Any imprisoned person, sentenced prior to April 23, 1956, may file, on or before March 1, 1957, in the court in which he was convicted, a petition requesting that he be furnished with a stenographic transcript of the proceedings at his trial. * * * In the event the court finds that it is impossible to furnish petitioner a stenographic transcript of the proceedings at his trial because of the unavailability of the court reporter who reported the proceedings and the inability of any other court reporter to transcribe the notes of the court reporter who served at the trial, *or for any other reason*, the court shall deny the petition. (Italics supplied.)

On Smart's petition, the court entered, on November 21, 1956, an order that the official shorthand reporter, pursuant to rule 65–1(2), transcribe an original and a copy of the notes taken of the aforesaid proceedings and deliver them to Smart without cost within a reasonable time.

Attached to the petition for habeas corpus in the district court, and marked relator's exhibit P, is an affidavit by Reporter Brookins, under date of January 8, 1957, that

> "* * * after diligently searching for my original shorthand notes in the above entitled cause and spending four hours, I am unable to locate same. I am, therefore, unable to transcribe the notes in this matter taken on March 13th, 1950 and cannot comply with the order in this case under Supreme Court Rule 65–1."

On February 7, 1957, counsel for defendant tendered "his Bill of Exceptions to the Court", which a judge of the court signed, identified and sealed, pursuant to said rule 65–1(2) and ordered it filed, which was done.

On June 20, 1957, counsel for defendant moved the court "to obtain omitted parts of the transcript of the proceedings" and the court allowed the motion. On October 3, 1957, defendant's attorney moved the court to issue a writ of mandamus. This motion was allowed. In his brief in this court, defendant's counsel states that this writ of mandamus was "to compel the Official Shorthand Reporter to comply with the Court's order for the omitted parts of the transcript".

In September 1958, Smart filed in the Criminal Court what his present counsel refers to as his third post-conviction petition, alleging that the failure of the state to furnish a further and complete stenographic transcript violated his constitutional rights. On October 16, 1958, the court denied the prayer of the petition and dismissed it.

On writ of error from the Supreme Court of Illinois on December 1, 1960, that court held in case No. 2661 (not reported) that its ruling in People v. Berman, 19 Ill.2d 579, 169 N.E.2d 108 was decisive of Smart's contention and therefore writ of error was denied. Certiorari was denied, 366 U.S. 930, 81 S.Ct. 1653, 6 L.Ed.2d 390 (1961). The petition for writ of habeas corpus in the federal district court was filed by Smart on February 19, 1962.

We have withheld our decision in this case pending a ruling in Norvell v. Illinois, 373 U.S. 420, 83 S.Ct. 1366, 10 L.Ed. 2d 456, which was decided on May 27, 1963. That case involved Willie Norvell, who was convicted of murder in the Illinois courts in 1941 and sentenced to 199 years in prison. He did not obtain a transcript because he was indigent and unable to pay the costs thereof, and he did not pursue an appeal. In 1956 Norvell moved the trial court to furnish a stenographic transcript of his trial. While the court entered an order as requested, it subsequently appeared that the reporter had died some years earlier and that no one could read his shorthand notes. Testimony of 10 witnesses was heard, evidently in an effort to establish a bystander's bill of exceptions, but they could not recall the evidence at

the 1941 trial. The Supreme Court, 83 S.Ct. at 1367–1368, pointed out:

" * * * Thus in 1956 it was not possible for Illinois to supply petitioner with the adequate appellate review of his 1941 conviction which he failed to pursue at that time.

* * * * * *

"The issue in the case is whether Illinois has made an 'invidious discrimination' against petitioner. Griffin v. Illinois, supra, 351 U.S. p. 18, 76 S.Ct. p. 590."

At p. 1368 of 83 S.Ct., the court added:

" * * * And so we have the narrow question—whether a State may avoid the obligation of Griffin v. Illinois, where, without fault, no transcript can be made available, the indigent having had a lawyer at the trial and no remedy having been sought at the time."

At page 1368 of 83 S.Ct., the court said:

"When, through no fault of the State, transcripts of criminal trials are no longer available because of the death of the court reporter, some practical accommodation must be made. We repeat what was said in Metropolis [Theatre]. Theater Co. v. Chicago, 228 U.S. 61, 69–70, 33 S.Ct. 441, 443, 57 L.Ed. 730:

" 'The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific. * * * What is best is not always discernible; the wisdom of the choice may be disputed or condemned.'

"The 'rough accommodations' made by government do not violate the Equal Protection Clause of the Fourteenth Amendment unless the lines drawn are 'hostile or invidious.' Welch v. Henry, 305 U.S. 134, 144, 59 S.Ct. 121, 124, 83 L.Ed. 87. We can make no such condemnation here. For, where transcripts are no longer available, Illinois may rest on the presumption that he who had a lawyer at the trial had one who could protect his rights on appeal."

No fair-minded person can attribute to the State of Illinois any hostility or invidiousness which in any way deprived Smart of a transcript for the last day of his trial. Rather the record before us shows affirmatively that various court orders were entered at his behest in attempts to procure the missing part of the transcript if it was possible to find it. Even if we concede that the absence of any part of the transcript might hamper Smart in an attempt to secure a review of his conviction, it cannot be rationally contended that the Fourteenth Amendment has ever been construed as a complete insulation against the "slings and arrows of outrageous fortune", which may strike anyone at any time and are unfortunately incidental to life itself. Counsel for Smart has never challenged the good faith or the truth of Brookins' statement that he could not find the missing notes. There has been no suggestion of any human power which can find them. Counsel simply asserts:

" * * * Until such a transcript is made available to Relator by a new trial, the State will continue arbitrarily to restrict him without his fault, to a narrower scope of appellate review than is permitted an appellant who has a full transcript. This is the discrimination and arbitrariness by the State which violates the Fourteenth Amendment."

However, the inescapable facts inexorably require us to hold that the Fourteenth Amendment does not require the performance of the impossible.

In this court, James T. Otis, Esq., of the Illinois Bar, has represented Smart as court-appointed counsel. For his diligent service in that respect we express our appreciation.

For the reasons herein set forth, the order of the district court is affirmed.

Order affirmed.