**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Everett Edmond RHODES, Defendant-Appellant.**

**No. 15243.**

United States Court of Appeals
Seventh Circuit.

May 20, 1966.

Schnackenberg, Circuit Judge, dissented.

Kenneth Allen Knutson, Chicago, Ill., for appellant.

Edward V. Hanrahan, U. S. Atty., Edward J. Murray, Asst. U. S. Atty., Chicago, Ill., for appellee, John Peter Lulinski, Lawrence Jay Weiner, Asst. U. S. Attys., of counsel.

Before SCHNACKENBERG and CASTLE, Circuit Judges, and MAJOR, Senior Circuit Judge.

CASTLE, Circuit Judge.

Everett Edmond Rhodes, defendant, appeals from a judgment of the district court convicting him, after a trial without a jury, on counts of an indictment charging illegal sales of heroin, 21 U.S.C.A. § 174 and 26 U.S.C.A. § 4705(a). It was charged that the sales occurred respectively on June 22, 1964 and July 1, 1964. At the trial, defendant was represented by his own counsel and in this court by court-appointed counsel.

At his trial defendant admitted that he took money from, and purchased drugs and delivered them to, a federal narcotics agent. But he pleaded the defense of entrapment by the agent, stating that he was induced to and did believe that he was then cooperating with the narcotics agent.

Defendant testified, *inter alia*, that he had visited his parole officer, Jose Hernandez, before the foregoing events occurred and had sought his advice as to what he should do. To corroborate his testimony about the inducement and his belief that he was only "cooperating" with a federal agent, defendant subpoenaed the parole officer, Jose Hernandez, to give testimony and to bring certain records regarding defendant's visits to Hernandez.

At the trial Hernandez was called as a witness for defendant and was examined by his counsel. He testified that defendant "requested advice as to what to do" and that he replied:

"Our advice was interpretation of policy for people on parole. If information meant talking or going to the office or giving oral information, he was free to do it voluntarily if he wanted to do so.

"If cooperation meant getting involved in transactions, either selling, buying or delivering or carrying, then he didn't have our permission to do that."

Hernandez then stated that he could not further tell the conversation because of a departmental memorandum from the attorney-general. Government counsel then cited to the court the Code of Federal Regulations, Title 28—Judicial Administration, ch. 1, § 16.1.[1]

The court sustained the government's objection to the parole officer's testifying further about the conversation on the basis of privilege afforded by the regulation concerning non-disclosure, and after inspecting the entire parole file of the defendant *in camera* sustained the contention of the government that the contents thereof need not be disclosed. The file, under seal, has been transmitted to this Court.

The government relies upon the rationale of Palermo v. United States, 360 U.S. 343, 350 and 354, 79 S.Ct. 1217, 3 L.Ed.2d 1287, and the Jencks Act, 18 U.S.C.A. § 3500, as affording by analogy a proper basis for the court's rulings and its subsequent denial of the defendant's motion for a mistrial because of those rulings.

Whatever impact the reasons for the enactment of the Jencks Act, and the subsequent teachings of *Palermo* concerning the statute's application and the propriety of employing an *in camera* procedure in the resolution of questions arising thereunder with respect to the production of government records, may have in the situation where, as here, the witness involved has been called by the defense rather than the prosecution, we perceive no basis under the facts and circumstances here involved for excluding the testimony of the parole officer witness as to the content of conversations with defendant on the ground of privilege. No resort to the rationale of the Jencks Act or to that of *Palermo* is necessary to excuse the production of the records for defense examination or use. In the posture in which the issue arose the defendant had no right to examine or use such records for the purpose of the possible impeachment of his own witness, and, of course, no right to search this government file on the possibility that materials in aid of the defense might be gleaned therefrom. But, certainly, the subject matter of the conversation the defendant sought to have

---

1. No officer or employee of the Department of Justice shall produce or disclose, in response to a subpoena, order, or other demand * * * of a court or other authority any information or material contained in the files of the Department of Justice or any other information or material acquired as a part of the performance of his official duties or because of his official status, without the prior approval of the Attorney General. * * *

the witness disclose for the purpose of attempting to corroborate his own testimony did not involve national security or defense, secrets of state, or matter similarly privileged. No challenge was made as to the relevancy of the testimony sought to be elicited. And any likelihood that the interrogation of the witness might develop into an exposure of inner workings of the government's investigative processes could have been guarded against by the interposition of a proper objection should the questioning have taken such a course.

In our opinion the principle recognized and applied in United States v. Andolschek, 2 Cir., 142 F.2d 503, is equally controlling with respect to the content of the conversation here involved. The government elected to prosecute the defendant, and insofar as conversations between its parole officer and the defendant about matter relevant and material to the defendant's claimed relation to the government's narcotic law enforcement activities are concerned "[t]he government must choose; either it must leave the [conversations] in the obscurity from which a trial would draw them, or it must expose them fully".

The court's ruling honoring the claim of privilege which was made and excusing the witness from testifying further about the conversation, although he had already testified to a part of his conversation with the defendant, was not withdrawn from the application of *Andolschek* by the *in camera* examination of the parole file. No examination of the file could have of itself determined that it contained in full the content of the conversation about which the defendant was inquiring. And there is no independent evidentiary showing that it did.

We conclude that the court's ruling sustaining the government's objection to the witness' testifying further with respect to the content of his conversation with the defendant was error which requires reversal.

We extend our thanks and compliments to Mr. Kenneth A. Knutson of the Chicago, Illinois, bar for the able presentation he made of defendant's case on appeal as court-appointed counsel.

The judgment order of conviction and sentence appealed from is reversed and the cause is remanded to the District Court for a new trial.

Reversed and remanded for a new trial.

SCHNACKENBERG, Circuit Judge (dissenting).

At the trial in the district court before Judge Robson, defendant was represented by his own counsel.

Defendant there pleaded the defense of entrapment by a federal narcotics agent, stating that he was induced to and did believe that he was then cooperating with the agent, but that before those events occurred he had visited his parole officer, Hernandez, and sought his advice as to what he should do.

As corroboration, he subpoenaed Hernandez to give testimony and produce records regarding his visits to Hernandez.

At the trial, Hernandez did testify that defendant "requested advice as to what to do" and his reply was as set forth in Judge Castle's opinion, including Hernandez' refusal to fully disclose the conversation with defendant because of the departmental memorandum from the attorney-general, in support of which government counsel cited the Code of Federal Regulations, Title 28—Judicial Administration, ch. 1, § 16.1.

The district court sustained the government's objection to disclosure of this conversation, and, after inspecting in camera the entire parole file of defendant, the district court also sustained the government's objection to disclosure of the contents of the parole file.

This file has been also inspected *in camera* by me.

Defendant relies on United States v. Andolschek, 2 Cir., 142 F.2d 503 (1944). However, in *Andolschek*, the contents of the reports were not in the record and therefore the reviewing court was not in

a position to determine to what extent their exclusion was prejudicial. On the other hand, in the case at bar, not only did the trial judge examine the entire parole file of defendant *in camera*, but as has been pointed out, it was likewise examined by me.

Furthermore, following the enactment of the Jencks Act, 18 U.S.C.A. § 3500, the Supreme Court in Palermo v. United States, 360 U.S. 343, 350, 79 S.Ct. 1217, 1223 (1959) said, in part:

"To be sure, the statute does not, in so many words, state that it is the exclusive, limiting means of compelling for cross-examination purposes the production of statements of a government witness to an agent of the Government. But some things too clearly evince a legislative enactment to call for a redundancy of utterance. One of the most important motive forces behind the enactment of this legislation was the fear that an expansive reading of *Jencks* would compel the undiscriminating production of agent's summaries of interviews regardless of their character or completeness. Not only was it strongly feared that disclosure of memoranda containing the investigative agent's interpretations and impressions might reveal the inner workings of the investigative process and thereby injure the national interest, but it was felt to be grossly unfair to allow the defense to use statements to impeach a witness which could not fairly be said to be the witness' own rather than the product of the investigator's selections, interpretations, and interpolations. The committee reports of both Houses and the floor debates clearly manifest the intention to avoid these dangers by restricting production to those *statements* specifically defined in the bill. * * *" (Emphasis supplied.)

and, at 354, 79 S.Ct. at 1225, the court added:

"* * * However, when it is doubtful whether the production of a particular statement is compelled by the statute, we approve the practice of having the Government submit the statement to the trial judge for an *in camera* determination. Indeed, any other procedure would be destructive of the statutory purpose. The statute governs the production of documents; it does not purport to affect or modify the rules of evidence regarding the admissibility and use of statements once produced. * * *"

While the defense called Hernandez as a witness and he was not a government witness, I believe that the reasoning in *Palermo* and the Jencks Act applied to the *in camera* inspection of the government file by the trial judge and, to the extent that it is applicable, to this court.

For these reasons, including the result of my inspection *in camera* of the entire parole file of defendant, I agree with the result reached by the district court. I would hold that the defense of entrapment was not proved and the district court did not err in denying defendant's motion for a mistrial as to its *in camera* inspection of the file. Accordingly the judgment from which this appeal was taken should be affirmed.