**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Everett Edmond RHODES, Defendant-Appellant.**

**No. 16471.**

United States Court of Appeals
Seventh Circuit.

July 31, 1968.

Robert S. Bailey, Oak Park, Ill., for appellant.

Thomas A. Foran, U. S. Atty., Lawrence T. Stanner, Asst. U. S. Atty., Chicago, Ill., John Peter Lulinski, Michael B. Nash, Asst. U. S. Attys., of counsel, for appellee.

Before CASTLE, Chief Judge, and SWYGERT and KERNER, Circuit Judges.

SWYGERT, Circuit Judge.

Everett Edmond Rhodes appeals from a judgment of conviction entered after a jury found him guilty on all four counts of an indictment charging him with violations of 26 U.S.C. § 4705(a) and 21 U.S.C. § 174. The indictment charged that Rhodes engaged in two sales of heroin, one occurring on June 22, 1964, the other occurring on July 1, 1964.

At Rhodes' first trial held in March 1965, he was found guilty by the court sitting without a jury. During that trial, Rhodes called his parole officer, Mr. Jose Hernandez, as a witness on his behalf. The purpose of calling Mr. Hernandez was to obtain corroboration for Rhodes' story that he made the two sales of heroin, believing that by so doing he was cooperating with government agents. After Mr. Hernandez had testified that Rhodes had "reported that he had been approached by Narcotic Agents requesting his cooperation with them," he was asked, "And did he tell you anything else that day?" Mr. Hernandez replied, "That is all I'm free to say at this moment." [1] Government counsel then stated, "We are objecting to any answers by Mr. Hernandez of any further information other than [that] which he has already disclosed, and doing so pursuant to the regulation issued by the Attorney General." The court sustained the Government's objection.

On appeal to this court, we reversed Rhodes' conviction and remanded the case for a new trial. United States v. Rhodes, 360 F.2d 865 (7th Cir. 1966). In concluding that the court's ruling sustaining the Government's objection was erroneous, we reasoned:

[W]e perceive no basis under the facts and circumstances here involved for excluding the testimony of the parole officer witness as to the content of conversations with defendant on the ground of privilege. * * * [T]he subject matter of the conversation the defendant sought to have the witness disclose for the purpose of attempting to corroborate his own testimony did not involve * * * secrets of state, or matter similarly privileged. No challenge was made as to the relevancy of the testimony sought to be elicited. 360 F.2d at 866, 867.

After the case was remanded but before the commencement of the second trial, Mr. Hernandez died of natural causes. The only issue presented in this appeal is whether the death of Mr. Hernandez before the second trial, thereby forever depriving Rhodes of the parole officer's allegedly corroborating testimony, resulted in the deprivation of his rights of due process and compulsory

[1] This testimony was but a small part of Mr. Hernandez' testimony with respect to his conversations with Rhodes.

process under the fifth and sixth amendments.

In resolving this issue, two preliminary observations are in order. First, Rhodes made no effort at the second trial to introduce Mr. Hernandez' first-trial testimony. Under the generally accepted rule, if a witness who testifies at a trial is unavailable to testify at a retrial of the same cause due to death, absence, or other like reason, his testimony at the first trial is admissible at the second trial as an exception to the hearsay rule. C. McCormick, Handbook of the Law of Evidence, §§ 230–238 (1954). Mr. Hernandez' testimony at the first trial, although not very detailed, did provide some corroboration for Rhodes' story that he had been approached by narcotic agents who sought his cooperation. Yet Rhodes declined to offer this testimony at the second trial.

Second, Mr. Hernandez' death after the first trial was a fortuitous event for which the Government could not be responsible. Likewise, the Government is not chargeable with purposely preventing Mr. Hernandez from testifying at the first trial on frivolous or insubstantial grounds. Before he took the stand at the first trial, Mr. Hernandez had received orders from his superiors outlining the extent to which he could testify concerning the details of conversations during his meetings with Rhodes. In addition, when Mr. Hernandez refused to answer further questions and the Government interposed its objection based on privilege, the district judge asked Government counsel what officials had imposed the limits on Mr. Hernandez' testimony. Thus, despite the fact that we held that the district judge erred in sustaining the objection based on privilege, the objection was not advanced capriciously or in bad faith, but rather was dictated by an error of judgment on the Government's part.

Under these circumstances, we do not believe that Rhodes' second trial was constitutionally deficient. The district judge displayed commendable patience and liberality in conducting the second trial. Rhodes, although represented by able counsel at the trial, was permitted, in addition to his counsel, to make opening and closing statements to the jury and to cross-examine Government witnesses. Moreover, during Rhodes' direct testimony, the district judge on several occasions overruled arguably meritorious Government objections in order to "let him [Rhodes] tell his story." Given this liberality, Rhodes was permitted to testify at great length as to the content of his conversations with Mr. Hernandez concerning his cooperation with narcotic agents.

In United States ex rel. Smart v. Pate, 318 F.2d 559 (7th Cir. 1963), this court was confronted with a somewhat analogous situation. In 1950 Smart was tried and convicted in the state court by a jury of murder. The trial proceedings were recorded by three official shorthand reporters. Although he did not seek a direct review of his conviction, Smart, in 1953, filed a petition in forma pauperis in the state court seeking a transcript of his trial proceedings at public expense. The petition was denied. He also filed a petition for a writ of mandamus in 1954 to obtain a copy of the transcript which was denied by the Illinois Supreme Court. In 1956 the Supreme Court, in the landmark case of Griffin v. People of State of Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 decided that a state could not constitutionally withhold a trial transcript from a convicted person on the ground of his poverty. On the basis of the *Griffin* decision and an Illinois Supreme Court rule promulgated pursuant thereto, Smart obtained a state court order requiring the delivery of a transcript to him. However, one of the shorthand reporters was unable to find his notes and therefore he could not transcribe a portion of the proceedings. The Illinois Supreme Court denied Smart's writ of error in which he contended that the unavailability of a portion of the transcript violated his constitutional rights. Thereafter, this court affirmed the district court's denial of Smart's petition for a writ of habeas corpus in words that have

equal applicability to the instant situation. We said:

No fair-minded person can attribute to the State of Illinois any hostility or invidiousness which in any way deprived Smart of a transcript for the last day of his trial. * * * Even if we concede that the absence of any part of the transcript might hamper Smart in an attempt to secure a review of his conviction, it cannot be rationally contended that the Fourteenth Amendment has ever been construed as a complete insulation against the "slings and arrows of outrageous fortune", which may strike anyone at any time and are unfortunately incidental to life itself. Counsel for Smart has never challenged the good faith, or the truth of Brookins' statement that he could not find the missing notes. There has been no suggestion of any human power which can find them. * * * [T]he inescapable facts inexorably require us to hold that the Fourteenth Amendment does not require the performance of the impossible. 318 F.2d at 562.

For the foregoing reasons, the judgment of conviction is affirmed.