**UNITED STATES of America ex rel. John O. HUNTER, Petitioner,**

**v.**

**Hon. Harold W. FOLLETTE, Warden of Green Haven Prison, Stormville, New York, Respondent.**

No. 68 Civ. 2597.

United States District Court
S. D. New York.

March 27, 1969.

**1024**

Alan David Oshrin, Commack, N. Y., for petitioner.

Louis J. Lefkowitz, Atty. Gen. of State of New York, for respondent; Brenda Soloff, Asst. Atty. Gen., of counsel.

## OPINION

FRANKEL, District Judge.

On September 7, 1957, petitioner shot and killed his 17-year old son. He was indicted for (1) murder in the second degree and (2) the carrying and use of a dangerous weapon as a felony. The second charge was dismissed on consent at the close of the prosecution's case, a matter involved in an issue (No. 2) considered below. The jury returned a verdict convicting petitioner of first-degree manslaughter, and he was sentenced on April 23, 1958, as a second felony offender, to a prison term of from 25 to 40 years. It appears that he was about 57 years of age at the time.

From the evidence the jury could, and probably did, find the following unhappy facts: On the day of the killing petitioner's son and another youth were working on the son's car, which was jacked up in the yard of the house in which petitioner and his family resided. Petitioner came out of the house, asked what the boys were doing, told them the car could not be repaired, and ordered them to "get it out of here." Then he re-entered the house. A few minutes later he came out again, and proceeded to yell at and threaten the boys for their failure to comply with his earlier directive. The performance was repeated a third time, but on·this occasion petitioner referred threateningly to a gun and warned he would make the boys "run so hard [they'd] see fire, or some-

thing of that sort." With that he went back into the house, emerged with a rifle, walked to a point near a shed on the property, and watched for a minute while his son started to back the car out of the driveway. Then he fired a shot. The son hastily stopped the car, leaped out, and started to flee with his companion. Petitioner fired a second shot. His son fell, wounded but still alive. Petitioner walked past him and into the house. The other boy and his sister summoned the police. When the police arrived petitioner's son was dead.

After he had been placed under arrest, petitioner told several police officers that the rifle was a war souvenir and that he had been demonstrating the manual of arms to his son when the weapon was accidentally discharged.

Petitioner's conviction was affirmed by the Appellate Division, People v. Hunter, 10 A.D.2d 1007, 204 N.Y.S.2d 950 (2d Dep't. 1960). Leave to appeal was denied by the Court of Appeals. The Supreme Court denied certiorari, 365 U.S. 849, 81 S.Ct. 812, 5 L.Ed.2d 813 (1961).

The present proceeding is one of many petitioner has brought in an effort to have his conviction nullified. He came here *pro se*, filing lengthy papers and exhibits which displayed a familiar and understandable mixture of legal learning and confusion. He asked that counsel be assigned to represent him, a step which seemed appropriate both for the full protection of petitioner's interests and for the guidance of the court. After some initial assignments and withdrawals (essentially for reasons of physical inconvenience), petitioner came to be represented by Alan David Oshrin, Esq. Mr. Oshrin has labored earnestly and at length, for which the court expresses its appreciation. Nevertheless, it seems clear that the application for a writ of habeas corpus must be denied. Despite the number and variety of his claims, petitioner presents none which warrants either issuance of the writ or an evidentiary hearing.

1. Petitioner alleges that the failure to transcribe the opening statements, summations, and portions of the voir dire deprived him of an adequate appellate review. His general assertion that the omitted portions of the record "contained most of the * * * trial errors which are reversible," presents no ground for federal habeas corpus. Moving beyond the generalities, petitioner and his assigned counsel reach alleged errors (considered hereinafter, points 2 and 3) claimed to have occurred in the untranscribed portions of the state trial. These asserted errors, it develops, stating them broadly in petitioner's favor, present no grounds for habeas. Before turning to those specifics, we may document briefly the thought that the bare complaint that a transcript (not timely requested) was not made shows no denial of federally guaranteed due process.

Although since Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956) the States have been, and have been required to be, increasingly solicitous of the rights of indigent defendants to pursue appellate and post-conviction remedies without pecuniary roadblocks, e.g., Eskridge v. Washington State Board of Prison, 357 U.S. 214, 78 S.Ct. 1061, 2 L.Ed.2d 1269 (1958); Lane v. Brown, 372 U.S. 477, 83 S.Ct. 768, 9 L.Ed.2d 892 (1963); Draper v. Washington, 372 U.S. 487, 83 S.Ct. 774, 9 L.Ed. 2d 899 (1963); Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967); Gardner v. California, 393 U.S. 367, 89 S.Ct. 580, 21 L.Ed.2d 601 (1969), the Federal Constitution still does not require the impossible. If the trial transcript is unavailable due to the death of the court reporter, Norvell v. Illinois, 373 U.S. 420, 83 S.Ct. 1366, 10 L.Ed.2d 456 (1963), or parts of the trial proceedings have not been reported, United States ex rel. Smart v. Pate, 318 F.2d 559 (7th Cir. 1963), the defects are not remediable by a federal judge.

Unlike *Griffin* and its progeny, this is not an equal protection case. Cf. United States ex rel. Wilson v. McMann, 408 F.2d 896 (2d Cir.1969). Rather, this is a case of a non-indigent defendant who was treated no differently from others. Cf. United States v. Carella, 411 F.2d 729 (2d Cir. 1969). The case may be different, of course, where a record is purposely not kept and where the omission is seen (or powerfully suspected) to have been evilly motivated. But that is not this case. All indications show, simply, that the reporters' notes now claimed to have been vital could have been transcribed on request of petitioner's paid counsel, but that no such request was timely made. Cf. People v. Fearon, 13 N.Y.2d 59, 242 N.Y.S.2d 33, 192 N.E.2d 8 (1963). Moreover, the passages where disputes occurred, raising questions which might have been (and, in several instances were) subjects for later scrutiny, on appeal or otherwise, were in fact transcribed and preserved—e.g., for the present uses considered below.

In these circumstances, the sweeping claim that the Fourteenth Amendment requires a word-by-word transcript must be rejected.

2. Turning, then, to petitioner's more specific allegation of an unrecorded trial occurrence which is claimed to have been an offense against due process, we reach the main issue urged on direct appeal, exhausted in post-conviction proceedings, and now raised by federal habeas.[1]

---

1. Petitioner alleges, evidently invoking Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), that the district attorney commented during his summation on his failure to take the stand. Although the failure to show exhaustion of this claim might bar the remedy, we proceed to the merits and reject the argument. Assuming that such a statement was made (though not recorded, since no objection was registered by defense counsel), Hunter's rights were protected by the trial judge's charge on the presumption of innocence, which emphasized that "a defendant may take the stand or may stay off the stand, and that fact may not be used against him." In any event, Griffin v. Califor-

At least once, perhaps twice, in his opening statement, the assistant district attorney referred to a prior conviction of petitioner's. Although the exact substance of the statement is not known because of the failure of the court reporter to do more than note that "Assistant District Attorney Bendersky made his opening statement to the Jury on behalf of The People * * *", for purposes of decision, we accept, with full force, the several versions tendered by petitioner's papers in this proceeding.

Moving from fresh memories to stale memories, we begin with defense counsel's motion for a mistrial at the conclusion of the People's case on the ground that

> "At the opening of this trial in the course of the People's opening to the jury, the District Attorney made the remark on two occasions that the defendant had been previously convicted of a crime."

On appeal, the same attorney stated that the prosecutor had "intimated to the jury that the defendant had been convicted of a similar crime." And now, some ten years after the event, petitioner quotes the district attorney as saying:

> "I will prove to you that the defendant has been convicted of a similar crime, is a terror to his family and neighbors, is a menace to society and should be convicted." [2]

■ It is not important whether the prior conviction was mentioned once or twice, or whether it was characterized as a "similar" offense, in the opening. The decisive point is that the prior conviction was material to the prosecution's case, on the second count, when the prosecutor opened; that the reference to it was plainly proper; that the prosecutor, in all fairness, refrained from introducing any evidence of the prior conviction when he later concluded (perhaps erroneously, to petitioner's advantage) that the second count should be dropped; and that petitioner's conclusory charge of some nefarious design in the prosecutor's course of action is nowhere supported, but is belied by the record.

■ "In * * * situations [where] the jury learns of prior crimes committed by the defendant, but the conceded possibility of prejudice is believed to be outweighed by the validity of the State's purpose in permitting introduction of the evidence" the Due Process Clause is not violated. Spencer v. Texas, 385 U.S. 554, 561, 87 S.Ct. 648, 17 L.Ed. 2d 606 (1967). And the proof of prior crimes for the purpose of bringing a defendant within a recidivist statute or raising a crime from misdemeanor to felony is constitutionally sanctioned. United States ex rel. Smith v. Fay, 409 F.2d 564 (2d Cir. 1969). The facts of this case place it squarely within these recent precedents. Under the original indictment, the prosecutor was entitled to prove defendant's prior conviction, which made the charge in the second count a felony. At the close of the People's case, this second count was dismissed by consent after the district attorney informed the court that he had "offered no evidence of prior conviction with respect to the second count of the indictment * * because upon investigation and extensive research by our Law Department, we have become convinced that as a matter of law" a rifle is not a "concealed weapon" within the meaning of the Penal Code. At that time the trial judge pointed out to the district attorney that the Hunter indictment dealt with possession and use rather than concealment, concluding:

> "But I think under the circumstances you're right in making the motion

---

nia is not applicable to petitioner's much earlier trial. Tehan v. Shott, 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453 (1966).

2. A similar quotation is attributed to the trial judge upon sentencing in a type- written appendix to the habeas petition purporting to be a copy of an article which appeared in the Long Island Press on April 24, 1958.

that you do make in any event * * * because I don't think this action ought to be confused with such a count in the indictment."

It was after this colloquy that defense counsel moved unsuccessfully for a mistrial on the basis of the district attorney's opening. Denying the motion, the judge gave the standard instruction that "what counsel have said is not evidence * * *."

In United States ex rel. Smith v. Fay, *supra*, our Circuit affirmed the denial of habeas on the ground that neither the Due Process nor the Equal Protection Clause forbids the kind of procedure here employed. The only distinctions between that case and the one here are that in *Smith* (1) the prosecutor read the indictment which recited the prior conviction; (2) the trial judge at that point instructed the jury of the limited purpose of the prior conviction; and (3) the count to which proof of the prior conviction would have been relevant was subsequently stricken for failure of proof. The differences are not material.

■ 3. In a related claim, petitioner suggests that the dropping of the second count was part of a scheme of the prosecutor to use the prior conviction as a means of prejudicing the jury in an otherwise weak case. This is an unfounded characterization and conclusion. The mere mention of a prior conviction as part of "a proper outline of what the prosecution intended to offer in support of its charge" surely does not amount to a "persistent and deliberate course of conduct" intended "improperly to bring before the jury irrelevant considerations or inadmissible evidence." United States ex rel. Fernanders v. Fay, 241 F.Supp. 51, 55 (S.D.N.Y.1965), aff'd, 359 F.2d 767 (2d Cir.), cert. denied, 385 U.S. 880, 87 S.Ct. 166, 17 L.Ed.2d 107 (1966). Particularly on a record where the evidence for conviction seems to have been overwhelming, and where the prosecutor might well have offered proof of the prior conviction had he nursed the evil scheme laid

to him by petitioner, this entire inquiry is unrewarding.

■ 4. Petitioner alleges that massive publicity "broadcast to the people of Suffolk, Nassau, and Queens County by the Radio, television and newspapers continuous from the time of his arrest to his sentencing" deprived him of a fair trial. In support of this claim he submits a seven-page exhibit consisting of copies of 18 articles appearing in two local papers between the date of the shooting (September 1957) and 1962, when post-conviction relief was being sought. Neither the nine pretrial articles (the last one appearing almost three months before trial), nor the three published in the course of the trial, nor all together, sustain the contention that petitioner was deprived of a fair trial. The amount of publicity, considering the atrocious character of the crime, was, after all, remarkably slight. There is no intimation that any of the jurors who convicted petitioner was infected in any pertinent respect. There appears to have been no need felt by counsel on the spot to seek a postponement, change of venue, or other relief which might have been deemed appropriate if there was any contemporaneous apprehension of the kind petitioner now undertakes, retrospectively, to create.

This is not a case where "the totality of circumstances" conveys an impression of prejudice, thus rebutting the normal presumption that the jurors were impartial. Irvin v. Dowd, 366 U.S. 717, 722–723, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961); Sheppard v. Maxwell, 384 U.S. 333, 352–355, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966). Although the voir dire is not part of the transcript except for that part announcing to Hunter his right to challenge individual jurors and one instance where defense counsel asked a question of a venireman to which the district attorney objected, it seems clear that the defense attorney was not concerned with the problem of prejudicial publicity. The jury and alternates were impaneled within an hour and fifteen minutes.

The defense attorney never made any motion or objection during the trial addressed to possible problems engendered by publicity;[3] and the trial judge each night carefully instructed the jury not to seek outside information or to "look at any newspapers."

It is pertinent, too, that the news accounts appear to have been factual and impartial, far from the kind of inflammatory materials that cause major concern in this area. And there were no attendant circumstances to enhance the possible impact of the news media or their representatives. This was certainly not a case where the "procedure employed by the State involve[d] such a probability that prejudice [would] result that it [should be] deemed inherently lacking in due process." Estes v. Texas, 381 U.S. 532, 542-543, 85 S.Ct. 1628, 1633, 14 L.Ed.2d 543 (1965), quoted in Sheppard v. Maxwell, *supra*, 384 U.S. at 352, 86 S.Ct. 1507. There were neither the courtroom disruptions nor the pervasive and emotional news accounts which characterized the cited cases. The argument about publicity is, in sum, not substantial.

5. There is a gingerly suggestion that certain statements made by the petitioner to town detectives after the shooting should not have been received in evidence. The thought and the pertinent portions of the state record have been considered with care. In the end, there is no merit to this point.

Eight or ten other contentions are scattered through petitioner's papers. All have been considered. Most are on their face not subjects for federal habeas—for example, the charge on intoxication as a defense, the charge on possible interest of family members as witnesses, and the plainly lawful length of the sentence.

None of the additional points warrants a hearing or further consideration of any kind.

The petition is denied. So ordered.

---

3. In a not uncharacteristic attack on the lawyer who defended him on trial and appeal, petitioner charges inadequacy of counsel, placing heavy reliance on the fact that the lawyer was subsequently disbarred for absconding with church funds. However reprehensible that fall from grace might have been, it is no basis (and in a word, petitioner has no basis) for the argument that counsel was incompetent in the relevant sense. Cf. United States ex rel. Maselli v. Reincke, 383 F.2d 129, 132 (2d Cir. 1967); Borchert v. United States, 405 F.2d 735, 738 (9th Cir. 1968).