**Ex parte Richard Dean THORBUS.**

**No. 42901.**

Court of Criminal Appeals of Texas.

April 29, 1970.

Rehearing Denied July 15, 1970.

Stewart J. Alexander, San Antonio, Edmund N. Anderson, Forth Worth, Carolyn F. Hartmann, San Antonio, for appellant.

James E. Barlow, Dist. Atty., and Sparta Bitsis, Asst. Dist. Atty., San Antonio, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

ONION, Judge.

This is a habeas corpus proceeding by an inmate of the Texas Department of Corrections attacking the murder conviction under which he is confined. Such conviction with the punishment assessed at life was affirmed by this court in Thorbus v. State, Tex.Cr.App., 243 S.W.2d 840. See the companion case of Miers v. State, 157 Tex.Cr.R. 572, 251 S.W.2d 404.

Acting pursuant to Article 11.07, Vernon's Ann.C.C.P., and Ex parte Young, Tex.Cr.App., 418 S.W.2d 824, the petitioner represented by retained counsel filed his post conviction habeas corpus application in the convicting court. Said application, among other things, alleged the ineffective assistance of counsel at the trial and on appeal and that petitioner had been deprived of a statement of facts on appeal. At a hearing before the Judge of the 144th District Court (formerly the Criminal District Court of Bexar County) the petitioner offered only evidence as to the deprivation of a statement of facts on appeal.

At such hearing it was established that while appellant had retained counsel at his 1951 trial and apparently on appeal,[1] as

---

1. It appears petitioner was represented by two attorneys at his trial, one of whom continued his representation on appeal. A search of the original appellate record, however, fails to reveal that appellant's counsel filed an appellate brief. On rehearing a pro se brief was filed.

our original opinion reflects, he did file a pauper's oath in the trial court to secure a statement of facts for the purpose of appeal. No statement of facts accompanied the appellate record.

The trial judge found that no statement of facts was ever transcribed in the case; that the court reporter and the judge who presided at the trial are now deceased and there exists no means by which a statement of facts can be reproduced at this time; that an out of time appeal is thus rendered impossible.

He concluded that this indigent petitioner was deprived of a valuable constitutional right through no fault of his own, and that his application for writ of habeas corpus should be granted.

The record reflects that the petitioner was sentenced on May 4, 1951, no motion for new trial having been filed. Notice of appeal was given and the appellant was granted 90 days from the date of sentence to prepare and have filed a statement of facts and bills of exception.

On August 1, 1951, 89 days later, the petitioner filed a pauper's oath (executed on July 31, 1951) alleging that he did not have sufficient funds to pay for a statement of facts and requesting the court to order the court reporter to prepare such a statement of facts. The record does not reflect that such pauper's oath was ever called to the trial judge's attention or that any order concerning the same was ever entered. A supplemental transcript contained a filed statement of the court reporter dated August 1, 1951, certifying the failure to prepare a statement of facts had not been due to his negligence or default; that he learned of the pauper's oath filed that very day and would as soon as possible prepare the same for approval and transmission to the Court of Criminal Appeals. As earlier

noted, no such statement of facts was, however, transcribed.

■ Article 760, Sec. 6, V.A.C.C.P., in effect at the time, provided in part:

"When defendant cannot pay.—When any felony case is appealed and the defendant is not able to pay for a transcript of the testimony or give security therefor, he may make affidavit of such fact, and upon the making of such affidavit, the court shall order the official court reporter to make a narrative statement of facts and deliver it to such defendant. * * * "[2]

To bring himself within the scope of the statute the indigent must not only file the pauper's affidavit but must bring the affidavit to the trial court's attention. Pedroza v. State, 97 Tex.Cr.R. 621, 263 S.W. 283; Stockman v. State, 135 Tex.Cr.R. 337, 120 S.W.2d 267; Brown v. State, 136 Tex.Cr.R. 521, 126 S.W.2d 992; Moody v. State, Tex.Cr.App., 219 S.W.2d 90. See 55 A.L.R.2d 1072, 1109 and cases collated there.

■ It is also well established that an indigent seeking to avail himself of the benefits of the statute must act with diligence to comply with the statute's requirements.

In Freeman v. State, 135 Tex.Cr.R. 50, 117 S.W.2d 93, it was held the defendant could not complain he had been denied a statement of facts on appeal where he had not filed his pauper's affidavit until the 85th day after the overruling of the motion for a new trial, and according to the affidavit of the court reporter and written statement of the trial judge, it was physically impossible for the court reporter to prepare the statement of facts within the time (90 days) prescribed by law. The court also noted the defendant had given no reason for his failure to file the affidavit early enough so as to enable the court

2. By the time petitioner's conviction was affirmed, former Article 760, Sec. 6, supra, had been repealed by former Article 759a, Sec. 5 (Acts 1951, 52nd Leg., p. 819, ch. 465) which was subsequently amended in 1959 (Acts 1959, 56th Leg., p. 860, ch. 386, Sec. 1). See now Article 40.09, Sec. 5, V.A.C.C.P., 1965.

reporter to prepare the statement of facts within the 90 days required by law. See also Murphy v. State, 129 Tex.Cr.R. 623, 91 S.W.2d 738.

A similar result was reached in Francis v. State, 132 Tex.Cr.R. 591, 106 S.W.2d 279 and Capps v. State, 130 Tex.Cr.R. 166, 93 S.W.2d 407, where the pauper's affidavit was not filed until the 89th day as in the case at bar. See also Woods v. State, 134 Tex.Cr.R. 206, 114 S.W.2d 551.

■ While a compliance with the statute followed by a wrongful denial of the statutory benefits would have caused a reversal, 55 A.L.R.2d 1072, 1113, it does not appear that petitioner brought his pauper's oath to the attention of the trial judge or that he or his attorney exercised due diligence in seeking the benefits under the statute. No reason for the delay appears. At no time pending the appeal did the appellant or his counsel contend he had been wrongfully deprived of such statement of facts or that in absence of the same he had not been able to properly prepare the appeal, or if prepared the same would have reflected reversible error.

In addition to securing a free statement of facts the statute in effect at the time afforded the indigent accused as well as the affluent accused the opportunity to submit his appeal by an agreed statement of facts where that was possible and to present matters on appeal by formal bills of exception. The court on appeal did consider appellant's sole bill of exception. See Thorbus v. State, Tex.Cr.App., 243 S. W.2d 840. Even at this late date petitioner does not point out what error he· could have presented to the court even if he had been afforded the statement of facts.

It is clear then that the petitioner is not entitled to any post conviction relief as a result of any violation of the Texas statutory provisions in effect at the time. We must next consider whether a federal constitutional mandate requires a different result.

In · 1956, some years after petitioner's conviction, the United States Supreme Court held in Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891, 55 A.L.R. 2d 1055, that the due process and equal protection clauses of the Fourteenth Amendment are violated where a state statute providing for writs of error in all criminal cases as a matter of right is so administered as to deny full appellate review to an indigent defendant solely because of his inability to pay for a transcript of the record, while granting such review to all other defendants.

The court acknowledged a state was not required by the Federal Constitution to provide appellate courts or a right to an appellate review, but only when it does provide such review it cannot be done in a way that discriminates against some appellants on account of their poverty.

Under Illinois law at the time, indigent defendants under a sentence of death were provided with a free and full transcript while other indigent defendants could obtain a free transcript for appellate review of constitutional questions only but not for other alleged trial errors such as admissibility and sufficiency of evidence.

In reaching their decision it is interesting to note that the court said:

"Counsel for Illinois concedes that these petitioners *needed* a transcript in order to get adequate appellate review of *their alleged trial errors. There is no contention that petitioners were dilatory in their efforts to get appellate review,* or that the Illinois Supreme Court denied review on the ground that the allegations of trial court were insufficient. *We must therefore assume for purposes of this decision that errors were committed in the trial that would merit reversal,* but that the petitioners could not get appellate review of those errors solely because they were too poor to buy a stenographic transcript." (Emphasis supplied.)

After stating its holding the court also said:

"We do not hold, however, that Illinois must purchase a stenographer's transcript in every case where a defendant cannot buy it. The Supreme Court (Illinois) may find other means of affording adequate and effective appellate review to indigent defendants. For example, it may be that bystanders' bills of exception or other methods of reporting trial proceedings could be used in some cases."

The Griffin decision has been held to be fully retroactive, Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601, and it has been followed in such decisions as Burns v. Ohio, 360 U.S. 252, 79 S.Ct. 1164, 3 L.Ed.2d 1209; Smith v. Bennett, 365 U.S. 708, 81 S.Ct. 895, 6 L.Ed.2d 39; Lane v. Brown, 372 U.S. 477, 83 S.Ct. 768, 9 L.Ed.2d 892; Entsminger v. Iowa, 386 U.S. 748, 87 S.Ct. 1402, 18 L.Ed.2d 501; Gardner v. California, 393 U.S. 367, 89 S. Ct. 580, 21 L.Ed.2d 601; Williams v. City of Oklahoma City, 395 U.S. 458, 89 S.Ct. 1818, 23 L.Ed.2d 440.

We cannot conclude that Griffin and any of the decisions following it entitle this petitioner to the post conviction relief he seeks.

In Norvell v. Illinois, 373 U.S. 420, 83 S.Ct. 1366, 10 L.Ed.2d 456, it was held that where, without fault of the State, no transcript of the evidence can be made available (the court reporter having died), the indigent having had a retained lawyer at the trial and no remedy having been sought at the time or until such transcript was no longer available, the State may rest on the presumption that he who had a lawyer at the trial had one who could protect his rights on appeal.

And in United States ex rel. Hunter v. Follette, D.C., 307 F.Supp. 1023, the Court dealt with the bare complaint as in the case at bar that a transcript (not timely requested) was not made and resulted in a denial of due process. The Court did not agree saying:

"Although since Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956) the States have been, and have been required to be, increasingly solicitous of the rights of indigent defendants to pursue appellate and post-conviction remedies without pecuniary roadblocks, e. g., Eskridge v. Washington State Board of Prison, 357 U.S. 214, 78 S.Ct. 1061, 2 L.Ed.2d 1269 (1958); Lane v. Brown, 372 U.S. 477, 83 S.Ct. 768, 9 L. Ed.2d 892 (1963); Draper v. Washington, 372 U.S. 487, 83 S.Ct. 774, 9 L.Ed.2d 899 (1963); Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967); Gardner v. California, 393 U.S. 367, 89 S.Ct. 580, 21 L.Ed.2d 601 (1969), the Federal Constitution still does not require the impossible. If the trial transcript is unavailable due to the death of the court reporter, Norvell v. Illinois, 373 U.S. 420, 83 S.Ct. 1366, 10 L.Ed.2d 456 (1963), or parts of the trial proceedings have not been reported, United States ex rel. Smart v. Pate, 318 F.2d 559 (7th Cir. 1963), the defects are not remediable by a federal judge.

"Unlike *Griffin* and its progeny, this is not an equal protection case. Cf. United States ex rel. Wilson v. McMann, 408 F.2d 896 (2d Cir. 1969). Rather, this is a case of a nonindigent defendant who was treated no differently from others. Cf. United States v. Carella, 411 F.2d 729 (2d Cir. 1969). The case may be different, of course, where a record is purposely not kept and where the omission is seen (or powerfully suspected) to have been evilly motivated. But that is not this case. All indications show, simply, that the reporters' notes now claimed to have been vital could have been transcribed on request of petitioner's paid counsel, but that no such request was timely made. Cf. People v. Fearon, 13 N.Y.2d 59, 242 N.Y.S.2d 33, 192 N.E.2d 8 (1963). Moreover, the passages where disputes occurred, rais-

ing questions which might have been (and, in several instances were) subjects for later scrutiny, on appeal or otherwise, were in fact transcribed and preserved–e. g., for the present uses considered below.

"In these circumstances, the sweeping claim that the Fourteenth Amendment requires a word-by-word transcript must be rejected."

Long prior to Griffin Texas provided several different methods of presenting error for appellate review in criminal cases, i. e., bills of exception, an agreed statement of facts and a court reporter's transcription of the testimony referred to as a statement of facts. These methods were available to the affluent defendant as well as the destitute defendant. The State did require the defendant claiming to be a pauper to file an affidavit to that effect. Both the indigent and affluent were required not to be dilatory in making the request for a statement of facts which certainly seems to fall within the right of a state to make appropriate classifications or to lay down conditions for criminal appeals. The State did not sanction differentiations unrelated to a rational policy of criminal appeals and deny full appellate review solely because of a defendant's poverty.

 In the case at bar the petitioner's retained counsel utilized on the appeal a formal bill of exception to present one ground of error which the court considered. No showing is made that any effort was made to secure an agreed statement of facts. Even though he was dilatory in not filing his pauper's oath until the 89th day within the 90 days allowed to perfect the appeal, and, even though the affidavit was not shown to have ever been called to the trial judge's attention or an order entered, the petitioner never contended on the appeal or rehearing that he had been unjustly deprived of the same or that there were trial errors which could not be presented to the appellate court in absence of the same.

Instead, petitioner has waited over 18 years and after the death of the judge and court reporter to seek post conviction relief claiming he had been deprived by the State, through no fault of his own, of a statement of facts. In his application for habeas corpus he makes absolutely no allegation that he was deprived of a full appellate review by lack of a statement of facts, other means being unavailable to him to present any claimed errors. In fact, even at this late date, we are left to speculate as to the nature of trial errors, if any.

Petitioner claims only that he was entitled to a statement of facts at the time of his appeal, he did not get one, he is now entitled to an out of time appeal, but since that is impossible in absence of the court reporter's notes, his conviction must be set aside and a new trial granted.

We cannot agree that under the allegations made, the evidence and circumstances presented the petitioner is entitled to the relief sought.

The application for writ of habeas corpus is denied.