**In the Matter of David TRACEY,**
**Petitioner,**

v.

**Joseph L. JANCO, Sheriff of Monongalia County, West Virginia, Respondent.**

**Civ. A. No. C–72–45–E.**

United States District Court,
N. D. West Virginia.

Dec. 7, 1972.

Mike Magro, Jr., Don J. Eddy, Morgantown, W. Va., for petitioner.

Willard A. Sullivan, Richard E. Hardison, Asst. Attys. Gen., Charleston, W. Va., for respondent.

MAXWELL, Chief Judge.

The Petitioner in the above styled civil action entered a plea of guilty on May 12, 1971, in the Circuit Court of Monongalia County, West Virginia, to a charge of selling marijuana. He was sentenced on July 20, 1971, to a term of one to five years in the state penitentiary. The Petitioner has been admitted to bail, pursuant to an order of this Court entered on April 10, 1972, pending the consideration and disposal by this Court of his petition.

In accordance with the provisions of 28 U.S.C. § 2241 et seq., the Petitioner seeks federal habeas corpus relief in this Court. The Petitioner alleges that he has exhausted his state remedies by way of direct appeal to the Supreme Court of Appeals of West Virginia. The Respondent concedes that the Petitioner has exhausted as to all but one of his allegations.

The Petitioner presents three contentions: (1) that his guilty plea was involuntary; (2) that the sentencing judge failed to give reasons, pursuant to § 62-12-8, West Virginia Code (Michie, 1966), for refusing the Petitioner release on probation; and (3) that the statutory classification of marijuana as a "narcotic drug" rather than a "dangerous drug" deprived the Petitioner of due process and equal protection of the law and constituted an arbitrary and unreasonable classification.

The Petitioner's guilty plea, according to the petition, came about as a result of plea negotiations between the Petitioner's attorney and the prosecutor of Monongalia County. The Petitioner states

that he and his attorney "were advised that if the petitioner entered a guilty plea he could have a full probationary hearing and an opportunity to produce all witnesses in and on his behalf." A probationary hearing was held on May 28, 1971, before the Circuit Court of Monongalia County. Twelve witnesses testified on the behalf of the Petitioner. An additional hearing was held on July 20, 1971, at which seven more witnesses testified, including the Petitioner. At the conclusion of the testimony at the second hearing, the presiding judge denied probation and sentenced the Petitioner. After the sentencing, a sixty day stay was obtained by the Petitioner in order to have the hearing record transcribed for an appeal of the denial of probation. An additional stay of sixty days was later obtained when it was learned that the record had not yet been transcribed. Around January 1, 1972, the Petitioner's counsel was informed by the court reporter that he could not find the notes taken by him at the first hearing, on May 28, 1971. As a consequence of the loss of the reporter's notes, the Petitioner did not have a complete transcript of the probationary hearing with which to appeal the judge's denial of probation.

The Petitioner contends that the above facts render his bargained plea involuntary. Petitioner claims that "he would not have entered the [guilty plea] had he not expected to have an opportunity to use the record of that [probationary] hearing on appeal, if probation was denied; that the record of that hearing would conclusively show that the action of the trial judge in denying probation was arbitrary and capricious and was a denial of due process and equal protection of the law."

In dealing with the Petitioner's first claim, that his guilty plea was involuntary, it should be noted at the outset that "plea bargaining" of itself does not make a guilty plea involuntary. The Supreme Court of the United States has stated: "The disposition of criminal charges by agreement between the pros-

ecutor and the accused, sometimes loosely called 'plea bargaining,' is an essential component of the administration of justice. Properly administered, it is to be encouraged." Santobello v. New York, 404 U.S. 257, 260, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971). When a guilty plea is made that is a result of plea negotiations, however, it is imperative that the prosecutor's promise, which led to the plea, be kept. "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." Santobello, supra, at 262, 92 S.Ct. at 499. In the instant case, the promise of the prosecutor was that a probationary hearing would be held prior to sentencing, and the promised hearing was in fact held. The fact that the reporter's notes of the first probation hearing were lost did not affect the voluntariness of the Petitioner's earlier entered plea, since the Petitioner still received the benefit of his bargain with the prosecutor. The failure of the reporter to locate his notes cannot be construed as the failure of the state to carry out its part of the bargain. The Petitioner's guilty plea was predicated upon the promise that a hearing would be held, not upon a promise that he would have a complete transcript with which to appeal the judge's denial of probation following such hearing.

Although the Petitioner's claim is that his plea became involuntary with the loss of the transcript of the hearing, if the petition were to be liberally construed so as to allege additionally a constitutional denial to the petitioner as a result of the lost transcript, this claim would also have to fail as a ground for relief. It has been held, in a habeas corpus proceeding, that a court reporter's inability to locate his notes of a homicide trial and the resultant inability of the state to furnish a trial transcript for appeal purposes, without any fault on the state's part, did not show a violation of the petitioner's rights under the Fourteenth Amendment, and therefore

did not entitle the petitioner to federal habeas corpus relief. United States ex rel. Smart v. Pate, 318 F.2d 559 (7th Cir. 1963). The court in *Smart* said, "Even if we concede that the absence of any part of the transcript might hamper Smart in an attempt to secure a review of his conviction, it cannot be rationally contended that the Fourteenth Amendment has ever been construed as a complete insulation against the 'slings and arrows of outrageous fortune', which may strike anyone at any time and are unfortunately incidental to life itself." 318 F.2d at 562. Reaching the same conclusion as Smart is United States ex rel. McKee v. Pate, 371 F.2d 405 (7th Cir. 1967). See also United States ex rel. Hunter v. Follette, 307 F.Supp. 1023 (S.D.N.Y.1969). The three above mentioned cases deal with instances where a trial transcript, or a part thereof, was unavailable, due to loss of the reporter's notes or death of the reporter, for use in appellate reviews of convictions. While these cases differ factually from that at bar, the reasoning of the cases is still applicable. Since the right to appeal a conviction is more zealously protected than the right to appeal the denial of probation (see, for example, the requirement that a defendant must be informed of his right to appeal, in Nelson v. Peyton, 415 F.2d 1154 (4th Cir. 1969), the cases above would indicate, even more strongly than in the case of an unavailable trial transcript, that the unavailability of a part of a probationary hearing transcript would not constitute grounds for federal habeas corpus relief.

As unfortunate as the loss of the transcript of the hearing may be, such loss does not make the Petitioner's guilty plea involuntary nor does the loss itself amount to a constitutional deprivation justifying habeas corpus relief in this Court.

 The Petitioner's second claim, that the sentencing judge failed to give reasons, pursuant to § 62–12–8, West Virginia Code (Michie, 1966) for refusing the Petitioner release on probation, is also without merit. The statute, in pertinent part, reads as follows: "Orders . . . refusing release on probation shall contain a brief statement by the court of the reasons for its action and shall be entered of record." Assuming the accuracy of the Petitioner's allegation, such an error by the trial judge would not be sufficient to raise the matter to the level of being a constitutional deprivation. Federal habeas corpus relief is available for the vindication of rights existing under federal law, not rights existing solely under state rules of procedure, Woodard v. Beto, 447 F.2d 103 (5th Cir. 1971). If a state statute is violated, as the Petitioner here claims, such a violation is not a proper ground for federal habeas corpus relief unless the violation amounts to a denial of a right guaranteed to the Petitioner by the Constitution of the United States. The alleged failure of the judge in this case to put a statement of his reasons for the denial of Petitioner's probation in an order to be entered of record would amount to a procedural error, in violation of a state statute, but not a constitutional deprivation. Federal habeas corpus is not merely an additional appeal available to state prisoners, Grundler v. North Carolina, 283 F.2d 798 (4th Cir. 1960). "The whole history of the writ . . . refutes a construction of the federal courts' habeas corpus powers that would assimilate their task to that of courts of appellate review. The function on habeas is different. It is to test by way of an original civil proceeding, independent of the normal channels of review of criminal judgments, the very gravest allegations. State prisoners are entitled to relief on federal habeas corpus only upon proving that their detention violates the fundamental liberties of the person, safeguarded against state action by the Federal Constitution." Townsend v. Sain, 372 U.S. 293, 311–312, 83 S.Ct. 745, 756, 9 L.Ed.2d 770 (1963).

In addition to the above discussion of the Petitioner's second claim, it should be noted that, even if the judge did not state in an order his reasons for the de-

nial of probation, he did state, albeit briefly, on the record, prior to sentencing, the reasons for his denial. (These comments appear at page 13 of the transcript of the July 20, 1971, hearing).

The Petitioner contends lastly ". . . that the classification of marijuana in the Narcotic Drug Act, West Virginia Code, Chapter 16, Article 8A, Section 1, Sub-section 15, Acts of the Legislature 1959 . . . instead of the Dangerous Drug Act, West Virginia Code, Chapter 16, Article 8B, Section 1, deprives the petitioner of due process and equal protection of the law . . . and constituted an arbitrary and unreasonable classification." It was held recently in State ex rel. Scott v. Conaty, W.Va., 187 S.E.2d 119 (1972) that "(t)he provisions of Articles 8A and 8B, Chapter 16, Code of West Virginia, 1931, as amended, regulating the possession, sale and use of certain drugs are not arbitrary and unreasonable and do not violate the rights guaranteed to a person by the First, Eighth, or Fourteenth Amendments to the United States Constitution." (Syllabus by the Court, Point 5). The constitutionality of criminal statutes that define marijuana as a "narcotic drug" has also been upheld in the federal courts. See, for example, Rener v. Beto, 447 F.2d 20 (5th Cir. 1971) and Scott v. United States, 129 U.S.App.D.C. 396, 395 F.2d 619 (1968). The Petitioner's contention, that the classification, by the West Virginia Legislature, of marijuana as a "narcotic drug" violates the reasonableness that is required of a legislative act in order for the act to comply with Fourteenth Amendment due process and equal protection, must fall. See 25 Am.Jur.2d, Drugs, Narcotics and Poisons, § 2.

 Although this Court has chosen to deal with the Petitioner's claims on their merits, it appears to the Court that the Petitioner may have failed to exhaust his state remedies as to all of his claims. The Petitioner's "Notice of Intent to File Petition for Appeal or Writ of Error," filed in the Circuit Court of Monongalia County on August 6, 1971, shows that the Petitioner listed, as grounds for appeal, neither his first claim in this petition, that his guilty plea was involuntary, nor his third claim in this petition, that the classification of marijuana as a "narcotic drug" was unconstitutional. This Court is unaware, from the information presented in the petition and answer, of the grounds in question being presented by the Petitioner to the Supreme Court of Appeals by way of later amendment, although an amended and supplemental petition was filed in the Supreme Court of Appeals, as alluded to in that court's order of March 22, 1972. In any case, this Court is not precluded from dismissing a petition on its merits without the petitioner having first exhausted his state remedies. Williams v. Coiner, 392 F.2d 210 (4th Cir. 1968); Jenkins v. Fitzberger, 440 F.2d 1188 (4th Cir. 1971).

For the reasons above stated, it is adjudged and ordered that the Petitioner's claims for federal habeas corpus relief be, and the same are hereby, denied, and the petition herein is dismissed and retired from the docket of this Court.

Pending further order of this Court, bail, previously granted to the Petitioner, is continued generally.