**INFORMATION MANAGEMENT SERVICES, INC., a Pennsylvania corporation trading and doing business as The Sound Wave, Plaintiff,**

v.

**The BOROUGH OF PLEASANT HILLS, a political corporation and subdivision, and the Members of the Borough Council of the Borough of Pleasant Hills, Warren F. Bourgeois, Jerry Koechel, W. Fred Mooney, Lewis A. Ondis II, William F. Steffen, Russell E. Webb, Norma K. Wright, President, individually and collectively, and the Mayor of the Borough of Pleasant Hills, Eldon D. Snyder, an individual and the Chief of Police of the Borough of Pleasant Hills, Stanley A. Smith, an individual, Defendants.**

Civ. A. No. 80–1613.

United States District Court,
W. D. Pennsylvania.

April 23, 1981.

---

Donald T. Dulac, Jr., McClure & Watkins, Pittsburgh, Pa., for plaintiff.

Henry E. Rea, Jr., Brandt, Milnes, Rea & Malone, Pittsburgh, Pa., for defendants.

## OPINION

TEITELBAUM, District Judge.

The matter *sub judice* represents another in the nationwide series of challenges to "drug paraphernalia" legislation. The instant case challenges a municipal ordinance, Ordinance No. 571 (hereinafter sometimes Ordinance), enacted on October 15, 1980 by the Borough of Pleasant Hills, Pennsylvania[1]. This litigation was begun by the plaintiff as the operator of a novelty store in Pleasant Hills on November 7, 1980. The jurisdiction of this Court was invoked under 28 U.S.C. §§ 1331 and 1343(3) and (4) for violation of 42 U.S.C. §§ 1983 and 1985.

When the complaint in this action was filed, the plaintiff also sought a temporary restraining order. Upon the representation of counsel for the defendants that the Ordinance would not be enforced *pendente lite*, the motion for a temporary restraining or-der was denied. Thereafter, the parties by virtue of the admission of facts in the answer and by stipulation of the exact terms of Ordinance No. 571 presented a justiciable controversy to this Court[2]. Moreover, the parties agreed that consideration of the request for permanent relief could be accelerated for disposition with the request for preliminary relief pursuant to Fed.R.Civ.P. 65(a)(2). Having studied the merits of this case and having taken particular care to consider the severability clause of Ordinance No. 571, this Court finds, for the reasons set forth below, that the Ordinance is so incomprehensible as to be unconstitutionally vague. Since a declaratory judgment issued pursuant to 28 U.S.C. § 2201 is a final appealable order and because this Court has no reason to believe that any attempt will be made to enforce Ordinance No. 571, no injunctive relief appears necessary at this time.

### I.

Before considering the Ordinance in great depth, it is helpful to review the origins of the Ordinance and its relationship to the Model Drug Paraphernalia Act[3]; the Uniform Controlled Substances Act[4]; the Pennsylvania Controlled Substance, Device and Cosmetic Act, (hereinafter Pa.Cont. Sub.Act) 35 P.S. §§ 780–101 to 780–144; and a recent untitled amendment to the Pa.Cont.Sub. Act, Act No. 186, 1980 Pa.Leg. Serv., (hereinafter Pa. Paraphernalia Amendment). As previously noted this is one of a nationwide series of actions challenging the constitutionality of various "drug paraphernalia" enactments. This wave of litigation appears to be the after-

---

1. *See* Appendix I.

2. By way of answer the defendants admit that the Sound Wave is a store in Pleasant Hills and that the Sound Wave sells objects which the defendants believe are prohibited by the terms of the Ordinance. This Court takes judicial notice that municipalities generally enforce their ordinances. This combination of facts establishes the existence of a justiciable controversy and the standing of the plaintiff, *see, Record Revolution No. 6 v. The City of Parma,* 638 F.2d 916 (6th Cir. 1980), *remanded —* U.S. —, 101 S.Ct. 2998, — L.Ed.2d —

(1981). Since the plaintiff's principal challenge is unconstitutional vagueness, abstention is inappropriate, *see e. g., High Ol' Times v. Busbee,* 621 F.2d 135 (5th Cir. 1980).

3. Model Drug Paraphernalia Act with Prefatory Note and Comments, Drug Enforcement Administration, U.S. Dept. of Justice (August, 1979).

4. The text of the Uniform Controlled Substances Act is contained in 9 Uniform Laws Annotated.

math of the widely distributed Model Drug Paraphernalia Act drafted in August of 1979 by the Drug Enforcement Administration of the United States Department of Justice. In drafting the Model Drug Paraphernalia Act, the Drug Enforcement Administration apparently hoped to eliminate what was described as a parasitic industry glamorizing drug abuse [5].

As originally contemplated, the Model Act was a compilation of suggested amendments to the Uniform Controlled Substances Act which had been prepared by the National Conference of Commissioners of Uniform Laws. The Model Drug Paraphernalia Act provides language for enactment in any jurisdiction with an occasional blank space and instructions on how best to fill the blank space to accommodate a specific jurisdiction. Given this background, the Model Drug Paraphernalia Act appears to have been designed to be compatible with the Uniform Controlled Substances Act.

In 1972, the Commonwealth of Pennsylvania adopted the Pa.Cont.Sub. Act as the Pennsylvania version of the Uniform Controlled Substances Act.[6] On October 15, 1980, the Ordinance in the instant case was adopted using almost precisely the language contained in the Model Drug Paraphernalia Act.[7] On December 4, 1980, Pennsylvania

adopted the Pa. Paraphernalia Amendment effective in sixty days, following the exact language suggested by the Model Drug Paraphernalia Act, as an amendment to the Pa.Cont.Sub. Act.[8] These substantial interrelationships suggest that some legitimate sources of legislative history for Ordinance No. 571 may be found in the Prefatory Note and Comments to the Model Drug Paraphernalia Act. Additionally, the compatibility of the Model Drug Paraphernalia Act to the Uniform Controlled Substances Act may provide assistance in determining how Ordinance No. 571 relates to the Pa. Cont.Sub. Act. Moreover, the Ordinance and the Pa. Paraphernalia Amendment, with their common language and antecedents, should also be subject to similar interpretations since the same Pennsylvania courts are obliged to interpret both.[9]

## II.

Having taken notice of the relationships of the Ordinance to the other materials, it is necessary to consider the language of the Ordinance in greater detail. Article I of the Ordinance contains its sole definition, the definition of drug paraphernalia. Article I can sensibly be divided into three parts: (1) the first sentence giving the one sentence general definition of drug para-

5. *See*, Prefatory Note and Comments to the Model Drug Paraphernalia Act.

6. 35 P.S. § 780–141 provides that the Pa.Cont. Sub. Act should be "applied and construed as to effectuate its general purpose to make uniform the law with respect to the subject of this act among those states which enact similar legislation."

7. In stating that the language of Ordinance No. 571 follows the language of the Model Drug Paraphernalia Act, it should be understood that the language of the Model Drug Paraphernalia Act suitable for any jurisdiction was enacted by the Borough of Pleasant Hills and not that blank spaces for completion by specific jurisdictions were left blank; the blanks were indeed completed. The only deviation in Ordinance No. 571 from the exact generally applicable language of the Model Drug Paraphernalia Act is that in Article I where the Model Drug Paraphernalia Act reads: "in violation of this Act (meaning the Controlled Substance Act of this State)," the Ordinance reads: "in violation of [the Pa.Cont.Sub. Act.]." This modification

appears to have resulted from adoption of the Model Drug Paraphernalia Act as a municipal ordinance instead of as an amendment to the state's Controlled Substance Act as the drafters had initially intended.

8. The Pa. Paraphernalia Amendment followed the exact generally applicable language of the Model Drug Paraphernalia Act, without exception. The blank spaces for specific jurisdictions were completed. *See* note 7 *supra*.

9. Passage of the Pa. Paraphernalia Amendment seems not to have preempted Ordinance No. 571 because section four of the amendment provides: "[n]othing in this Act relating to drug paraphernalia shall be deemed to supersede or invalidate any consistent local ordinance." It would seem if any local ordinance is to be considered "consistent" then Ordinance No. 571 which contains language identical to that in the Paraphernalia Amendment is probably one such local ordinance.

phernalia; (2) the words "[i]t includes, but is not limited to:" and the accompanying twelve part list; and, (3) the remainder of Article I consisting of the fourteen factors to be considered in determining whether an object is drug paraphernalia. These three parts do *not* appear to have been intended as three alternative or cumulative definitions.[10] Instead, part one appears to be the definition while parts two and three are guides to the interpretation of part one. Thus, the first sentence of Article I, when considered in light of the assistance in the remainder of the article, must stand or fall on its own terms.

### III.

A clear definition of drug paraphernalia is essential since this term is used repeatedly throughout the Ordinance. If it is unclear what drug paraphernalia encompasses then it would be equally unclear what was prohibited conduct with respect to such paraphernalia. For this reason it is essential to consider the language of that first sentence closely. It reads:

> The term "Drug Paraphernalia" means all equipment, products and materials of any kind which are used, intended for use, or designed for use, in planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packaging, repackaging, storing, containing, concealing, injecting, ingesting, inhaling, or otherwise introducing into the human body a controlled substance in violation of 35 P.S. §§ 780–101 to 780–144 ([the Pa.Cont. Sub. Act]).

Upon consideration of this definitional language, this Court cannot conceive why after devoting extensive efforts to defining "drug paraphernalia", no definition of the words used to define drug paraphernalia appears in Ordinance No. 571. While many of the words used to define drug parapher-

nalia are common words and have their ordinary meaning,[11] one phrase is a term of legal art; that phrase is "controlled substance." If Ordinance No. 571 is not to be unconstitutionally vague, then controlled substance must be defined by reference to some other definition of that phrase.

The origin of the Ordinance suggests one source of a definition. Because the Model Drug Paraphernalia Act was intended by its drafters to be enacted as an amendment to a state's Controlled Substance Act, they logically could have assumed that the terms used in the Model Drug Paraphernalia Act to define drug paraphernalia were already adequately defined in the Controlled Substances Act which was being amended and thus, it would be unnecessary to define terms like "controlled substance" in their proposal. Having already explored the relationship of Ordinance No. 571 to the Model Drug Paraphernalia Act and the Pa.Cont. Sub. Act, the inference can be drawn that Pleasant Hills intended to avoid this problem by absorbing the definitions of the Pa. Cont.Sub. Act, the legislation referred to in the Ordinance. In the Pa.Cont.Sub. Act, "controlled substance" is defined very specifically; see 35 P.S. §§ 780–102(b) and 780–104. However, if this is the correct definition of "controlled substance," then the definitions of other words in the Pa. Cont.Sub. Act would be shared by Ordinance No. 571.

There is another reason to assume that Ordinance No. 571 borrows the definitions of the Pa.Cont.Sub. Act. Since the Pa. Paraphernalia Amendment amended the Pa.Cont.Sub. Act, the Pa. Paraphernalia Amendment shares the definitions of the Pa.Cont.Sub. Act. Since Ordinance No. 571 and the Pa. Paraphernalia Amendment use the same language, *i. e.* the language of the Model Drug Paraphernalia Act, and since identical language should be construed identically, it would appear that Ordinance

---

**10.** *See,* Comments to Model Drug Paraphernalia Act, *passim.*

**11.** The Comments to the Model Act state:

The words "equipment, products and materials" should be interpreted according to their ordinary or dictionary meanings.
No other words are identified as common words or terms of art.

No. 571 borrows the definitions contained in the Pa.Cont.Sub. Act. While this analysis demonstrates with considerable strength that the term "controlled substance" in the Ordinance is not undefined, and that therefore the Ordinance is not unconstitutionally vague in this respect, the extension of this analysis to two other words used in the Ordinance and specifically defined in the Pa.Cont.Sub. Act seriously undermines logical *pari materia* construction of Ordinance No. 571 with the Pa.Cont.Sub. Act.

"Manufacturing"[12] appears in the Ordinance as one of twenty-two gerunds listing the various ways in which drug paraphernalia can be illegally used. Since manufacturing is specifically mentioned as one of the listed terms, and since principles of statutory construction, as well as common sense, dictate that each portion of a statute should independently contribute to the overall meaning, manufacturing should be understood to add something to the overall definition. For manufacturing to add to the definition of drug paraphernalia, manufacturing should be understood to mean something distinct from what is meant by the other listed gerunds. Ergo, manufacturing must mean something other than: planting, propagating, cultivating, growing, harvesting, compounding, converting, producing, processing, preparing, testing, analyzing, packaging, repackaging, storing, containing, concealing, injecting, ingesting or otherwise

introducing (into the human body). However, "manufacture"[13] is defined in the Pa. Cont.Sub. Act as production, preparation, propagation, compounding, conversion, processing, packaging, repackaging, labelling or relabelling, 35 P.S. § 780–102(b). This definition is broadened since production also includes planting, cultivating, growing and harvesting.[14] It can be seen that the very words used to define "manufacture" in the Pa.Cont.Sub. Act are listed in addition to "manufacturing" in the Ordinance. The explicit inclusion of these words in the Ordinance suggests that manufacturing did not have the broad definition provided in the Pa.Cont.Sub. Act.[15] This suggestion of divergence in the meaning of manufacturing in the Ordinance and the Pa.Cont.Sub. Act undermines the effort to define "controlled substance" by reading those two acts in *pari materia*.[16]

The above analysis was undertaken by this Court in an effort to extrapolate the meaning of "controlled substance." It appears that controlled substance is not explicitly defined in Ordinance No. 571. Moreover, reasonable efforts to borrow the precise definition provided in the Pa.Cont. Sub. Act are hampered by the apparent difficulty in making a *pari materia* construction of both laws. While these problems might not be sufficient for this Court to hold that Ordinance No. 571 is unconsti-

---

**12.** The following analysis could be repeated nearly verbatim for the word "producing." Having recognized this, the Court will forego explicit restatement of its analysis.

**13.** While the word manufacturing is used in the Ordinance and the word manufacture is defined in the Cont.Sub. Act, the possibility of any distinction on this basis is too remote to warrant further discussion.

**14.** The definition of production also includes manufacture: previously, manufacture was defined as including production. While this circular definition may lead to an interesting puzzle for a later Court, this Court is not faced with a challenge to the Pa.Cont.Sub. Act, but a municipal ordinance. While the meaning of manufacture is not a model of clarity in the Pa.Cont.Sub. Act, it is clear that there is some divergence in the meaning of that word in the Pa.Cont.Sub. Act and Ordinance No. 571.

**15.** The possibility that manufacture was used in the Ordinance to include labelling or relabelling appears ludicrous because (1) no part of the list of items of drug paraphernalia relates to labelling and (2) it is hard to believe that all labelling devices, perhaps including typewriters, are covered by Ordinance No. 571.

**16.** It is of course possible that the Pa. Paraphernalia Amendment implicitly altered the definition of manufacturing used in the Pa. Cont.Sub. Act since the Pa. Paraphernalia Amendment is the more recent enactment. However, if this is true, then the meaning of the Pa. Paraphernalia Amendment must be different from Ordinance No. 571, because the earlier of these two enactments, the municipal ordinance, could not have altered state law.

tutionally vague, this problem and the presence of a number of more perplexing problems, considered in greater detail below, present a law the meaning of which no person of ordinary intelligence would have a reasonable opportunity to know.[17]

## IV.

Having taken note of some definitional problems with Ordinance No. 571, the Court must consider more fundamental problems. For convenience, the first sentence of Article I of the Ordinance is again set forth:

> The term "Drug Paraphernalia" means all equipment, products and materials of any kind which are used, intended for use, or designed for use, in planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packaging, repackaging, storing, containing, concealing, injecting, ingesting, inhaling, or otherwise introducing into the human body a controlled substance in violation of 35 P.S. §§ 780–101 to 780–144 [the Pa.Cont.Sub. Act].

The phrase "in violation of 35 P.S. §§ 780–101 to 780–144" (the "in violation" clause) appears to modify all the gerunds in this sentence. Thus, drug paraphernalia seems

to be intended to encompass only equipment, products or materials that can or do facilitate a violation of the Pa.Cont.Sub. Act.[18] All of the prohibitions of that act are contained in 35 P.S. § 708–113(a)[19] and 780–114.[20] A review of these prohibitions leaves the reader puzzled for it seems that some of the ways of using objects listed in Ordinance No. 571 in no way lead to a violation of the Pa.Cont.Sub. Act. For example, the testing or the analyzing of a controlled substance is never a violation of the Pa.Cont.Sub. Act, whether the controlled substance is legally or illegally possessed.

Since testing and analyzing of controlled substances cannot be in violation of the Pa.Cont.Sub. Act, it is difficult to understand the prohibitions of the Ordinance. This tension was considered by the drafters of the Model Drug Paraphernalia Act who stated:

> It must be noted here that the activities of storing, testing and using illicit drugs are not in themselves violations of . . . the Uniform Controlled Substances Act. . . . But each activity necessarily includes the possession of illicit drugs, which is a violation of . . . [law].[21]

Thus the drafters suggest that the "in violation" clause means "illegally possessed[22]."

---

17. *See, Grayned v. City of Rockford*, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972) and *Parma, supra.*

18. The Ordinance refers to the Pa.Cont.Sub. Act, but does not state whether future amendments to that Act should be considered part of the Act for purposes of the Ordinance, or whether future amendments are not to be considered part of the Act for purposes of the Ordinance. While it seems more likely that amendments are not part of the Act for purposes of the Ordinance, since the words "as amended" were not included in the Ordinance to define the Pa.Cont.Sub. Act, it is unnecessary to consider the difficulties this could eventually present, (beyond those already mentioned *infra* at note 14) because the only changes in the Pa.Cont.Sub. Act since the passage of the Ordinance are those made by the Pa. Paraphernalia Amendment. As a practical matter, these changes are irrelevant to the meaning of the "in violation" clause in the Ordinance because the additional prohibitions added by the Pa. Paraphernalia Amendment do

not seem to add additional violations to the Pa.Cont.Sub. Act which would alter the definition of drug paraphernalia in the Ordinance.

19. *See* Appendix II.

20. This section reads:

> Distribution to persons under age eighteen
> Any person who is at least twenty-one years of age and who is not himself a drug dependent person who violates this act by distributing a controlled substance listed in Schedules I through V to a person under eighteen years of age who is at least four years his junior is punishable by a term of imprisonment up to twice that otherwise authorized by subsection (f) of section 13 of this act, in addition to any fine authorized by this act.

21. Comments to Model Drug Paraphernalia Act.

22. The Pa.Cont.Sub. Act defines the term "contraband" to include controlled substances ille-

Such a construction creates additional difficulties.

### A.

The first difficulty is that if the "in violation" clause means "which is illegally possessed," then the Ordinance can now be read:

The term "Drug Paraphernalia" means all equipment, products and materials of any kind which are used, intended for use, or designed for use, in planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packaging, repackaging, storing, containing, concealing, injecting, ingesting, inhaling, or otherwise introducing into the human body a controlled substance [which is illegally possessed].

The use of ellipses shows this sentence now reads "the term drug paraphernalia means [objects of use] in manufacturing ... a controlled substance [which is illegally possessed]." Frankly, this interpretation is not sensible: nothing can be illegally possessed prior to its manufacture. If any sense is to be made of the "in violation" clause in relation to manufacturing, then the clause must refer to the prohibitions on manufacture in the Pa.Cont.Sub. Act, 35 P.S. § 780–113(a). If the reference is to the Pa.Cont.Sub. Act's prohibitions, then consistency requires that the "in violation" clause refers to similar prohibitions on testing when testing is modified instead of manufacturing. As noted previously there are none.

The only remaining alternative in attempting a reasonable construction of the Ordinance is to assume that depending on which gerund is modified, the "in violation" clause has a different meaning. To prevent unconstitutional vagueness, there must be some certainty as to which meaning of the "in violation" clause applies to which gerunds. Unfortunately, there is little certainty.

The only remarks of the drafters which could assist in determining which gerunds were modified by the varying meanings of the "in violation" clause provides no assistance because the analysis is erroneous. As quoted above, the drafters stated:

It must be noted here that the activities of storing, testing and using illicit drugs are not in themselves violations of ... the Uniform Controlled Substances Act.... But each activity necessarily includes the possession of illicit drugs, which is a violation of [law].[23]

However, "using" illicit drugs is sometimes prohibited by the Pa.Cont.Sub. Act. The administration of a controlled substance is made illegal under the Pa.Cont.Sub. Act, see, 35 P.S. § 780–113(a)(14). It provides that unless a physician (or his assistant) administers controlled substances in accordance with professional medical practice such conduct is illegal.[24] The Pa.Cont.Sub. Act defines administer as "application of a controlled substance by injection, inhalation, ingestion or any other means ..." 35 P.S. § 780–113(b). Thus, it is possible to use—administer—a controlled substance in violation of the Pa.Cont.Sub. Act, however, only a physician (or his assistant) may violate this provision. This example of illegal use of a controlled substance precludes relying on the drafter's comments to determine which meaning of the "in violation" clause modifies which of the gerunds listed in Ordinance No. 571 and it becomes extremely difficult to determine what the "in violation" clause means.

### B.

Assuming that testing, as used in the Ordinance, referred only to testing of con-

---

gally possessed. 35 P.S. § 780–102(b). However, since this term is not defined in the Uniform Controlled Substances Act, it is difficult to meaningfully infer whether or not any implicit decision was made not to use this word in the Ordinance and thereby mean something different by use of the phrase "controlled substance in violation of the [Pa.Cont.Sub. Act]."

**23.** Comments to the Model Drug Paraphernalia Act.

**24.** For exact language, see Appendix II.

trolled substances which were illegally possessed, there are serious problems in supposing that such an interpretation would pass constitutional muster. In *Carey v. Population Services International*, 431 U.S. 678, 97 S.Ct. 2010, 52 L.Ed.2d 675 (1977) the Supreme Court stated:

> The reason for this unanimous rejection was stated in *Eisenstadt v. Baird* [405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349] 'It would be plainly unreasonable to assume that (the State) has prescribed pregnancy and the birth of an unwanted child (or the physical and psychological dangers of an abortion) as punishment for fornication.' We remain reluctant to attribute any such 'scheme of values' to the State.
>
> Moreover, there is substantial reason for doubt whether limiting access to contraceptives will in fact substantially discourage early sexual behavior.... Although we take judicial notice, as did the District Court, that with or without access to contraceptives, the incidence of sexual activity is high, and the consequences of such activity are frequently devastating, the studies cited by appellees play no part in our decision.

*Id.* at 695–96, 97 S.Ct. at 2021–2022 (citations and footnote omitted). Similarly this Court recognizes that access to drug paraphernalia for testing controlled substances may not inhibit drug abuse, but rather may serve to increase the risk of consuming impure or adulterated substances by drug abusers, certainly an unusual "scheme of values." While the issue of rational relationship is not before this Court in this facial challenge to the constitutionality of the Ordinance, the Court notes this potential constitutional problem makes more difficult any effort to interpolate how the Ordinance should be construed since unconstitutional constructions are not favored. As a result of the numerous and complex interpretive problems that exist in trying to understand the "in violation" clause and the gerunds modified by that clause, it is far from certain that any person is on notice as to what conduct is prohibited by the Ordinance.

## V.

The most serious and glaring defect in Ordinance No. 571 is the deficiency recently explained in *Record Revolution No. 6 v. City of Parma*, 638 F.2d 916 (6th Cir. 1980) *remanded* —— U.S. ——, 101 S.Ct. 2998, —— L.Ed.2d —— (1981). In that case, the Court explained that the phrase "designed for use" was deficient because that phrase would permit the intent of one person to make the act of another illegal. The Court found that four categories of persons; manufacturers, wholesalers, retailers and purchasers, could violate the municipal ordinances in issue there. Potentially the use by a purchaser of an object in connection with controlled substances could serve to create liability in the manufacturer. The Court noted that the ingenuity of drug abusers seemed limitless and was concerned that the sale of many ordinary items would create liability in persons with no nexus to drug abuse.

This Court is persuaded that the application of the transferred intent analysis developed in *Parma* with respect to the phrase "designed for use" is equally applicable to the phrase "intended for use" in the Ordinance, *see Weiler v. Carpenter*, 507 F.Supp. 837 (D.N.M.1981). A retailer to avoid selling "drug paraphernalia" must somehow determine whether the purchaser intends to use the object in connection with controlled substances in violation of the Pa.Cont.Sub. Act.

## VI.

The difficulties considered above by the Court are not all the potential problems with Ordinance No. 571. Rather, the Court has focused only on the most significant problems in the single definitional sentence of the Ordinance and has found that sentence incomprehensible, despite the Court's extensive reliance on interpretive aids to avoid making such a finding. Having found the definition of drug paraphernalia unfathomable, Ordinance No. 571 must be declared unconstitutionally vague in its entirety.

This Court is mindful that beyond the initial definitional sentence a host of other deficiencies may exist and takes this opportunity to note a few of the problems that would need to be resolved if "drug paraphernalia" had been defined. First, since the state and the borough are the same sovereign for double jeopardy purposes, the same conduct is now subject to different penalties, creating the possibility of inadvertent selective enforcement in violation of due process. *Compare* for example Article IV of Ordinance No. 571 *with* Act 186, Section 2; 1980 Pa.Leg.Serv. There are problems of the power of Pleasant Hills to control commercial speech beyond its boundaries and to list factors to be considered by a court. Lastly, the Court is puzzled by "what other authorities" can weigh the factors listed in Article I of the Ordinance, particularly number (14) expert testimony.

## CONCLUSION

Having carefully considered Ordinance No. 571 of the Borough of Pleasant Hills this Court finds that the definition of drug paraphernalia is impossible for anyone to rationally determine. The inordinate difficulty in making a sensible *pari materia* construction with the Pa.Cont.Sub. Act and the difficulty in sensibly reading all the words of the Ordinance meaningfully undermines the clarity of the Ordinance. Moreover, the phrases "designed for use" and "intended for use" are unconstitutionally vague since they depend on transferred intent. In making these findings the Court notes that not all problems have been discussed.

Lastly, the Court wishes to note that Pleasant Hills should not be chastized for enacting an ordinance that appears wanting. The problems of drug abuse are serious ones in today's world and efforts to prevent these problems should be encouraged. It is hoped that while this opinion finds one such effort to be unconstitutional, Pleasant Hills, and others, will not abandon their efforts to eradicate this social ill. The foregoing shall constitute findings of fact and conclusions of law pursuant to Fed.R. Civ.P. 52(a). An appropriate order will issue.