The PEOPLE of the State of Colorado,
Plaintiff-Appellee,

v.

Jerry L. CHASTAIN,
Defendant-Appellant.

No. 85SA68.

Supreme Court of Colorado,
En Banc.

March 16, 1987.

Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Peter J. Stapp, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Arthur M. Schwartz, P.C., Irvin Borenstein, Michael W. Gross, Sp. Deputy State Public Defenders, Denver, for defendant-appellant.

ERICKSON, Justice.

Defendant Jerry Lee Chastain (Chastain or defendant) was convicted by a jury of possession of burglary tools, § 18–4–205, 8B C.R.S. (1986). He appeals asserting four grounds for reversal: (1) the Colorado burglary tool statute is unconstitutional; (2) the evidence was insufficient as a matter of law to support the jury's verdict; (3) the trial court abused its discretion in failing to grant a mistrial when the defendant's subpoenaed witness did not appear at trial; and (4) statements and evidence obtained from the defendant by a private security guard were illegally obtained and should have been suppressed.[1] We affirm the defendant's conviction.

## I.

### The Facts

Henry M. Ragland (Ragland) was employed as a security guard at Penrose Hospital in Colorado Springs. On April 30, 1982, at approximately 2:55 a.m., Ragland was standing outside of the hospital security office when he heard a noise which he thought originated in the emergency room parking lot. Ragland went to the parking lot to investigate, and saw an individual (later identified as Jesse Lopez) behind the only automobile in the parking lot.[2] As he approached Lopez, he saw a man, who was later identified as Chastain, stand up next to Lopez. Lying on the ground between Lopez and Chastain was a "slide hammer" or "dent puller," a tool used by mechanics to remove dents from automobile bodies. Ragland retrieved the slide hammer and told Chastain and Lopez to accompany him to the security office. A second security guard, Larry V. Zenke, arrived and assisted Ragland.

Lopez and Chastain were searched in the security office. Lopez, who was searched by Ragland, had a screwdriver concealed under his jacket sleeve and was using the palm of his hand to keep it in place. Zenke found a screwdriver in Chastain's back pocket. Ragland placed both screwdrivers and the slide hammer on a shelf in the security office.

Without advising Lopez and Chastain of their "Miranda rights,"[3] Ragland ques-

1. This appeal was originally docketed in the court of appeals. The court of appeals requested that we accept jurisdiction because of Chastain's challenges to the constitutionality of section 18–4–205, 8B C.R.S. (1986). *See* §§ 13–4–102(1)(b), 13–4–110(1)(a), 6 C.R.S. (1973). The case was transferred to this court pursuant to section 13–4–110(3), 6 C.R.S. (1973).

2. The automobile belonged to Fortes Zeltri, a patient at the hospital. The prosecution and defense stipulated that Zeltri did not know either Chastain or Lopez, and that neither of them had permission to enter or use the automobile. It was stipulated that Zeltri inspected his car subsequent to April 30, 1982, and found no damage.

3. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

tioned them and inquired about their presence in the parking lot at 3:00 a.m. Chastain responded that they were at the hospital to visit a friend. Ragland did not believe the explanation,[4] and called the Colorado Springs Police Department. Ronnie L. Gibson, a police officer, arrived at the hospital at approximately 3:20 a.m. He took possession of the tools, placed Lopez and Chastain under arrest, advised them of their Miranda rights, and transported them to the Colorado Springs police station. Lopez and Chastain were charged with possession of burglary tools, a class five felony. § 18–4–205, 8B C.R.S. (1986). Lopez pleaded guilty to the charge and was sentenced. Chastain was tried and convicted by a jury.

At Chastain's trial, Lopez testified that the defendant called him and told him he had injured his leg and that he needed to be picked up at the hospital. When Lopez arrived at the hospital, he found the defendant sitting on the curb next to the only car in the parking lot. Lopez saw a stereo in the back seat of the car and decided to steal it, but did not tell Chastain of his intent. Instead, Lopez suggested that Chastain return to his car, which was parked about a block away, and wait. Lopez testified that he intended to steal the stereo after Chastain got into his car. When Chastain got up to walk to Lopez's car, he kicked the slide hammer, causing the "clank" which resulted in their apprehension by the security guards. Although Lopez adamantly claimed that Chastain knew nothing of his plan to break into the automobile and steal the stereo, Lopez admitted that the two screwdrivers and the slide hammer were in Chastain's possession when Lopez arrived at the hospital.

The prosecution impeached Lopez's testimony with his prior statements to Officer Gibson and the security guards. When Lopez and Chastain were detained by the security guards and subsequently transferred to the custody of the city police, Lopez "backed up" Chastain's story about meeting a friend at the hospital. Lopez told Officer Gibson that he and the defendant had been together since 10:00 p.m., which contradicted his trial testimony that he first met Chastain in the hospital parking lot at 3:00 a.m. Lopez admitted on cross-examination that he had lied to both the security guards and the Colorado Springs police officers.

Ragland testified that he had completed eighteen years of security work ranging from service with the military police in the Marines to a brief stint as a police officer for the city of Newport News, Virginia. Before he became a Newport News police officer, he was required to attend a police academy, where he learned how a slide hammer was used as a burglary tool. He testified that a slide hammer was a tool commonly used to remove locks from automobiles and houses, but that "the most common burglary tool was just an everyday screwdriver." Ragland said that he had been employed exclusively as a hospital security guard since 1973.

Gerald McElhaney (McElhaney), the owner and operator of Freeway Motors Paint & Body Shop, was called as a prosecution witness. He testified that Chastain's slide hammer was not the typical slide hammer used in auto body work. In McElhaney's opinion, the threads were too narrow and shallow to "grip" the sheet metal of an automobile body. On cross-examination by defense counsel, McElhaney stated that it would be impractical but not impossible to remove a dent from an automobile with Chastain's slide hammer. McElhaney also testified that he had removed an ignition lock from a car in his body shop with a slide hammer.

## II.

### The Constitutionality of § 18–4–205, 8B C.R.S. (1986)

A person commits the crime of possession of burglary tools

___

4. It appears from the record of the suppression hearing that the defendant provided the security guard with the name and telephone number of the friend that Lopez and Chastain were meeting at the hospital. The security guard telephoned the friend, who stated that he did not know either Lopez or Chastain. The court sustained the defendant's hearsay objection at trial and did not permit Ragland to testify to the friend's response.

if he possesses any explosive, tool, instrument, or other article adapted, designed, or commonly used for committing or facilitating the commission of an offense involving forcible entry into premises or theft by a physical taking, and intends to use the thing possessed, or knows that some person intends to use the thing possessed, in the commission of such an offense.

§ 18–4–205(1), 8B C.R.S. (1986).

The defendant claims that the burglary tool statute is unconstitutional for a number of reasons.

### A. Vagueness

Chastain asserts that his conviction must be set aside because the burglary tool statute is unconstitutionally vague. The defendant argues that section 18–4–205(1) does not provide an adequate definition of a burglary tool.

■ A party challenging the constitutionality of a statute for vagueness must prove beyond a reasonable doubt that the statute is so vague or indefinite that it fails to provide fair notice of the prohibited conduct, or that it fails to provide explicit standards for its enforcement. *High Gear and Toke Shop v. Beacom*, 689 P.2d 624, 630 (Colo.1984). *See also Grayned v. City of Rockford*, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972); *People v. Riley*, 708 P.2d 1359 (Colo.1985); *Exotic Coins, Inc. v. Beacom*, 699 P.2d 930 (Colo.1985), *appeal dismissed*, —— U.S. ——, 106 S.Ct. 214, 88 L.Ed.2d 214 (1986).

■ In our view, section 18–4–205 is not void for vagueness. A burglary tool is defined as *"any* explosive, *tool,* instrument, or other article *adapted, designed, or commonly used"* to facilitate the commission of an offense involving forcible entry or theft by physical taking. The broad definition of burglary tools reflects the General Assembly's recognition of the fact that a burglar's choice of tool is limited only by his imagination and ingenuity. The Supreme Court of Iowa, in interpreting the Iowa burglary tool statute, said:

The statute does not, however, undertake to define what tools come within the meaning of the term as used. And, turning away from the statute, we cannot say that any particular tool … is so generally and exclusively known as burglar's tools that the common mind must needs picture the same upon the bare utterance of the expression, and without further description. Quite to the contrary, it is undoubtedly true that any one of possible thousands of tools may be used by a burglar in the prosecution of his marauding expeditions. Indeed, it is difficult to conceive that there can be any tools made use of by burglars—from the bungler to the expert—which may not also have a place in the uses of legitimate industry.

*Mahar v. Lainson,* 247 Iowa 297, 300, 72 N.W.2d 516, 519 (1955), *cert. denied,* 350 U.S. 972, 76 S.Ct. 445, 100 L.Ed. 843 (1956) (quoting *State v. Erdlen,* 127 Iowa 620, 621, 103 N.W. 984, 985 (1905)).

Vagueness "is not a principle designed to convert into a constitutional dilemma the practical difficulties in drawing criminal statutes both general enough to take into account a variety of human conduct and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited." *Colten v. Kentucky,* 407 U.S. 104, 110, 92 S.Ct. 1953, 1957, 32 L.Ed.2d 584 (1972). *See also Exotic Coins, Inc. v. Beacom,* 699 P.2d at 943; *People v. Allen,* 657 P.2d 447, 449–50 (Colo.1983) (statutes must be sufficiently general to accommodate changing circumstances). We have not previously addressed the question of whether the Colorado burglary tool statute is void for vagueness. The courts of other jurisdictions have considered the validity of their respective burglary tool statutes when challenged for vagueness and almost without exception have found them to be constitutional despite the use of general language. *See, e.g., Hogan v. Atkins,* 224 Ga. 358, 162 S.E.2d 395 (1968); *Goldstine v. State,* 234 Ind. 388, 126 N.E.2d 581 (1955); *Mahar v. Lainson,* 247 Iowa 297, 72 N.W.2d 516 (1955), *cert. denied,* 350 U.S. 972, 76 S.Ct. 445, 100 L.Ed. 843 (1956);

*State v. Hart,* 200 Kan. 153, 434 P.2d 999 (1967); *State v. Briner,* 198 Neb. 766, 255 N.W.2d 422 (1977); *State v. Lawson,* 59 N.M. 482, 286 P.2d 1076 (1955); *State v. Pierce,* 69 Or.App. 620, 687 P.2d 161, *review denied,* 298 Or. 172, 691 P.2d 481 (1984); *Shafer v. State,* 214 Tenn. 416, 381 S.W.2d 254 (1964), *cert. denied,* 379 U.S. 979, 85 S.Ct. 683, 13 L.Ed.2d 570 (1965); *Logan v. State,* 448 S.W.2d 462 (Tex.Crim. App.1969); *State v. McDonald,* 74 Wash.2d 474, 445 P.2d 345 (1968).[5] *See generally* Annotation, *Validity, Construction and Application of Statutes Relating to Burglars' Tools,* 33 A.L.R.3d 799, 809–17 (1970).

We conclude that section 18–4–205(1), 8B C.R.S. (1986), defines a burglary tool with sufficient clarity to apprise a person of reasonable intelligence of that element of the crime.

### B. Overbreadth

■ The defendant also claims that the statute is overbroad because section 18–4–205 operates to criminalize many types of innocent conduct. Many lawful articles admittedly fall within the definition of a burglary tool and for that reason the defendant asserts that the statute is overbroad.

The overbreadth analysis is generally employed where legislation addresses constitutionally protected conduct, such as speech or assembly. *See People v. Bridges,* 620 P.2d 1, 5 (Colo.1980); *People v. Garcia,* 189 Colo. 347, 350, 541 P.2d 687, 689 (1975). The doctrines of vagueness and overbreadth frequently overlap, especially in the area of free speech. "A vague or imprecise statute addressed to conduct abutting constitutionally protected activity is, precisely because it is vague, very likely to cast a shadow of illegality over the protected activity and thus to be susceptible to attack on grounds of overbreath as well as vagueness." Model Penal Code § 250.2, at

339 n. 45 (1980). The doctrines of overbreadth and vagueness are distinct, however, because a statute may be clear yet may sweep too broadly and invade constitutionally protected freedoms. *See, e.g., Zwickler v. Koota,* 389 U.S. 241, 249–50, 88 S.Ct. 391, 396, 19 L.Ed.2d 444 (1967). However, the basic rights which the statute threatens must be identified in resolving the issue of overbreadth. *See, e.g., People v. Andrews,* 632 P.2d 1012, 1016 (Colo. 1981); *People v. Garcia,* 189 Colo. 347, 352, 541 P.2d 687, 690 (1975). Additionally, an overbreadth challenge must fail if the challenged law does not involve "a substantial amount of constitutionally protected conduct." *Village of Hoffman Estates v. The Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 494, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362 (1982). *See also New York v. Ferber,* 458 U.S. 747, 772–73, 102 S.Ct. 3348, 3362–63, 73 L.Ed.2d 1113 (1982); *Broadrick v. Oklahoma,* 413 U.S. 601, 615, 93 S.Ct. 2908, 2917, 37 L.Ed.2d 830 (1973); *People v. Fitzgerald,* 194 Colo. 415, 419, 573 P.2d 100, 103 (1978) (quoting *Broadrick v. Oklahoma,* 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973)).

"Innocent possession" of articles which may be used, designed or adapted for crimes involving forcible entry or theft by physical taking provides the only basis for the defendant's claim of overbreadth. Even assuming that such conduct is constitutionally protected within the meaning of the overbreadth analysis,[6] the language of the statute belies defendant's argument. A defendant can be convicted of possession of burglary tools only if he (1) possesses the proscribed article, (2) with the intent to use the article, or with the knowledge that another intends to use the article, to commit an offense involving forcible entry or theft by physical taking. § 18–4–205(1),

---

5. In *State v. Graves,* 299 Or. 189, 700 P.2d 244 (1985), the Supreme Court of Oregon held that the statutory provision defining burglary tools as those "commonly used" to commit burglary was unconstitutionally vague. We decline to follow the Oregon court.

6. *Cf. Record Revolution No. 6, Inc. v. City of Parma,* 638 F.2d 916, 927 (6th Cir.1980) ("The overbreadth doctrine prohibits a statute from making *innocent* or constitutionally protected conduct criminal.") (emphasis added), *vacated and remanded in light of new ordinance,* 451 U.S. 1013, 101 S.Ct. 2998, 69 L.Ed.2d 384 (1981).

8B C.R.S. (1986). The "innocent possession" envisioned by the defendant is simply not the type of conduct prohibited by the statute, and the statute cannot be read to criminalize such conduct.

### C. Conviction for Intent Alone

■ Because of the breadth of the statutory definition of burglary tool, the defendant claims that the offense essentially omits the *actus reus* element of the crime. We disagree.

The commission of a crime ordinarily requires concurrence of an unlawful act, *actus reas,* and a culpable mental state, *mens rea. Hendershott v. People,* 653 P.2d 385, 390 (Colo.1982), *cert. denied,* 459 U.S. 1225, 103 S.Ct. 1232, 75 L.Ed.2d 466 (1983). The language of section 18–4–205 again refutes the defendant's contention that one can be convicted for burglarious intent alone. The prosecution must prove that the defendant possessed a burglary tool and had the burglarious intent, or knowledge of another's burglarious intent, to use the burglary tool. The statute cannot be read to permit or condone conviction on proof of intent without proof of the other element of the crime.

### D. Transferred Intent

■ The defendant argues that section 18–4–205 permits the accused to be convicted on the basis of another's criminal intent because the statute alternatively defines the crime of possession of burglary tools as possession with knowledge that another intends to use the tool to effect a forcible entry or theft by physical taking. While we agree with the defendant's interpretation of the statute, we do not agree that the statute is unconstitutional for that reason.

Chastain relies on *Record Revolution No. 6, Inc. v. City of Parma,* 638 F.2d 916 (6th Cir.1980), *vacated and remanded in light of new ordinance,* 451 U.S. 1013, 101 S.Ct. 2998, 69 L.Ed.2d 384 (1981), where the sixth circuit enjoined enforcement of a city

ordinance penalizing the possession, manufacture or sale of drug paraphernalia. Manufacturers, wholesalers, retailers, and purchasers were subject to the provisions of the ordinance, and drug paraphernalia was defined to include items "intended for use" with controlled substances. 638 F.2d at 928. The ordinance authorized the conviction of a person in possession of an item "designed for use" with controlled substances, even though the accused used the paraphernalia for lawful purposes. The sixth circuit stated that "[t]he presence of transferred intent in the ordinances would infringe the due process clause by … convicting the defendant for another person's intent or misdeeds." *Id.; see also Information Management Services, Inc. v. Borough of Pleasant Hills,* 512 F.Supp. 1066, 1073 (W.D.Pa.1981).

Colorado's burglary tool statute clearly authorizes the prosecution and conviction of the defendant only if he *both* possessed the tool *and* had the requisite *mens rea,* which separates the Colorado statute from the constitutionally infirm ordinance in *Record Revolution v. Parma.* The statute does not impute a third party's culpable mental state to the defendant because the statute requires the prosecutor to prove that the defendant intended or had knowledge of another person's intent to use the tools to commit forcible entry or theft.[7]

### III.

### Sufficiency of the Evidence

Chastain asserts that the trial court erred in denying his motion for judgment of acquittal because the prosecution's evidence was insufficient as a matter of law. We disagree.

To withstand a motion for judgment of acquittal, the prosecution must present evidence which, when viewed in a light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a

---

7. A defendant "acts 'intentionally' or 'with intent' when his conscious objective is to cause the specific result proscribed by the statute defining the offense." § 18–1–501(5), 8B C.R.S. (1986). "A person acts 'knowingly' … with respect to conduct or to a circumstance described by a statute defining an offense when he is aware that his conduct is of such nature or that such circumstance exists." § 18–1–501(6), 8B C.R.S. (1986).

reasonable person that the defendant is guilty of the offense beyond a reasonable doubt. *People v. Bennett,* 183 Colo. 125, 130–31, 515 P.2d 466, 469 (1973); *see also People v. Stark,* 691 P.2d 334, 338 (Colo. 1984); *People v. Andrews,* 632 P.2d 1012, 1017 (Colo.1981). When weighing the evidence, the trial court must give the prosecution "the benefit of every reasonable inference which might fairly be drawn from the evidence." *People v. Gonzales,* 666 P.2d 123, 127 (Colo.1983).

■ We conclude that the evidence was sufficient to prove beyond a reasonable doubt that the defendant possessed a tool designed, adapted or commonly used for forcible entry or theft by physical taking. The evidence also sufficiently proved the defendant intended or at least knew of Lopez's intent to break into the automobile. We have consistently held that "direct proof of the defendant's state of mind is rarely available and, consequently, resort must necessarily be had to circumstantial evidence on this element." *People v. Taylor,* 655 P.2d 382, 384 (Colo.1982). The prosecution thus introduced sufficient evidence to prove both elements of the offense, section 18–4–205(1), 8B C.R.S. (1986), and the trial court properly denied the defendant's motion for judgment of acquittal.

## IV.

### The Denial of the Defendant's Motion for a Mistrial

■ Art Espinoza, a former employee of the defendant, did not appear at trial pursuant to a defense subpoena. Defense counsel stated that Espinoza had been personally served with a subpoena the day before trial, and that Espinoza was the sole defense witness. The trial judge issued a bench warrant for Espinoza's arrest and continued the trial for an additional twenty-four hours. When it became clear that Espinoza could not be found, the defendant moved for a mistrial and the trial court denied the motion.

Defense counsel's offer of proof was that the defendant was at one time a part-time employee at an automobile body shop owned by Espinoza. Espinoza would have testified that the defendant was familiar with the tools of the auto body trade, that he occasionally worked late at night and that it would not be unusual for him to possess a slide hammer and screwdriver at 3:00 a.m. According to the defendant, the trial court's failure to grant a mistrial constituted a denial of his rights to compulsory process and to due process. U.S. Const. Amend. VI and XIV; Colo. Const. Art. II, §§ 16 and 25. We disagree.

A defendant's right to compel the attendance of witnesses and to offer testimony at trial is "a fundamental element of due process of law." *Washington v. Texas,* 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019 (1967). However, the overlapping guarantees of the compulsory process clause and of the due process right to call witnesses are not absolute. *See United States v. Valenzuela-Bernal,* 458 U.S. 858, 867, 102 S.Ct. 3440, 3446, 73 L.Ed.2d 1193 (1982). The state has no obligation to produce a witness who, through no fault of its own, has become unavailable because of disappearance, illness, or death. *See Taylor v. Minnesota,* 466 F.2d 1119, 1122 (8th Cir.1972) (witnesses who could not be found), *cert. denied,* 410 U.S. 956, 93 S.Ct. 1425, 35 L.Ed.2d 689 (1973); *United States v. Rhodes,* 398 F.2d 655 (7th Cir.1968) (defense witness who died before trial), *cert. denied,* 394 U.S. 962, 89 S.Ct. 1311, 22 L.Ed.2d 563 (1969); *see also* Westen, *Confrontation and Compulsory Process: A Unified Theory of Evidence for Criminal Cases,* 91 Harv.L.Rev. 567, 595 (1978). Even in an instance where the state is responsible for the absence of a witness, the defendant cannot establish a violation of his constitutional right to compulsory process unless he can make a "plausible showing of how [the] testimony would have been both material and favorable to his defense." *Valenzuela-Bernal,* 458 U.S. at 867, 102 S.Ct. at 3446. The same materiality standard is applied in a due process analysis. *Id.* at 872, 102 S.Ct. at 3449.

Here, Espinoza left the jurisdiction after being subpoenaed, and there is no suggestion that his unavailability was due to any action or omission of the prosecution or the court. The defendant's rights under the fifth and sixth amendments therefore were not violated. *Cf. United States v. Ballesteros-Acuna,* 527 F.2d 928, 930 (9th Cir. 1975) (the state "is 'under no obligation to look for' a defendant's 'witnesses, in the absence of a showing that such witnesses were made unavailable through the suggestion, procurement, or negligence' of the Government").

■ In the absence of a constitutional violation, it is well-established that the decision to grant or deny a motion for a mistrial is directed to the sound discretion of the trial court. *People v. Saars,* 196 Colo. 294, 584 P.2d 622 (1978). The trial court's ruling will not be disturbed absent a clear showing of an abuse of discretion and prejudice to the defendant. *People v. Haymaker,* 716 P.2d 110 (Colo.1986); *Massey v. People,* 649 P.2d 1070 (Colo.1982).

We conclude that the trial court did not abuse its discretion because the grounds asserted for a mistrial were not "substantial and real." *See, e.g., People v. Moody,* 630 P.2d 74, 79 (Colo.1981); *Hamrick v. People,* 624 P.2d 1320, 1323 (Colo.1981). While Espinoza's anticipated testimony was relevant to the defense, the offer of proof shows that it was not "material" or "essential" to the defendant's claim. Defense counsel admitted that, at the time of the

incident in the hospital parking lot, Chastain was not employed by Espinoza, and that he would not have testified to the actions of the defendant on the evening of April 29, 1982. In addition, much of Espinoza's testimony would have been cumulative and was only intended to provide an innocent motive for possession of the tools. The jury became aware of Chastain's familiarity with automobile mechanic tools through the testimony of Lopez. Lopez stated that the defendant was an auto mechanic, and that he had been working on cars during the day of April 29, 1982. In our view, the trial court did not abuse its discretion, and the defendant was not unduly prejudiced by the denial of the motion for mistrial.

## V.

### Suppression of Statements Obtained by Private Security Guards

■ Ragland was permitted to testify to several statements made by Chastain while in the security office at the hospital. The defendant contends that his statements were elicited without a *Miranda* warning, and that the statements should have been suppressed.[8] Central to the defendant's argument is his characterization of the security guard as an "agent" of the state.

In *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the Court defined custodial interrogation in part as "questioning initiated by law enforcement officers," *id.* at 444, 86 S.Ct. at 1612, and

---

**8.** In *Hunter v. People,* 655 P.2d 374 (Colo.1982), we held that the trial court erred in failing to conduct an in camera hearing to ascertain the voluntariness of the defendant's signed confession which was obtained by a private security guard. We premised our holding on the Due Process Clause of the fourteenth amendment, and held that, although the confession was obtained from the defendant by a private citizen, "[s]tate action enters the picture ... when a trial court permits the prosecution at a jury trial to admit a defendant's confession ... that is, 'not the product of a rational intellect and a free will.'" *Id.* at 376 (citing *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963)).

The continued viability of *Hunter* is questionable as a result of the United States Supreme Court's decision in *Colorado v. Connelly,* ——

U.S. ——, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986). In that case, the Court reversed *People v. Connelly,* 702 P.2d 722 (Colo.1985), which affirmed the trial court's suppression of the defendant's confession to police officers. In *Connelly,* the defendant approached and confessed to an off-duty police officer "without any prompting." 107 S.Ct. at 518. The United States Supreme Court in *Connelly* noted that the "most outrageous behavior by a private party seeking to secure evidence against a defendant does not make that evidence inadmissible under the Due Process Clause," 107 S.Ct. at 521, and held that "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." 107 S.Ct. at 522.

thus *Miranda* by its own terms applies only to actions of law enforcement officials. *See, e.g., United States v. Parr-Pla,* 549 F.2d 660, 663 (9th Cir.), *cert. denied,* 431 U.S. 972, 97 S.Ct. 2935, 53 L.Ed.2d 1069 (1977); *United States v. Birnstihl,* 441 F.2d 368, 370 (9th Cir.1971); *cf. Boynton v. Casey,* 543 F.Supp. 995, 997 (D.Me.1982) (student had no right to *Miranda* advisement prior to questioning by public school authorities).

In a related context, the fourth amendment right to be free from unreasonable searches and seizures applies only to those searches or seizures conducted by state officials. *United States v. Jacobsen,* 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984); *Burdeau v. McDowell,* 256 U.S. 465, 475, 41 S.Ct. 574, 576, 65 L.Ed. 1048 (1921); *People v. Brewer,* 690 P.2d 860, 862 (Colo.1984); *People v. Benson,* 176 Colo. 421, 425, 490 P.2d 1287, 1289 (1971). It is well-established, however, that where civilians act as agents of the state, evidence obtained from an unlawful, privately conducted search must be suppressed. *Compare United States v. Harvey,* 540 F.2d 1345, 1353 n. 10 (8th Cir.1976) (statutorily authorized monitoring of telephone line by telephone company did not constitute state action) *with United States v. Canada,* 527 F.2d 1374, 1377 (9th Cir. 1975) (search by security guard at airport constituted state action), *cert. denied,* 429 U.S. 867, 97 S.Ct. 177, 50 L.Ed.2d 147 (1976). The agency rule exists to prevent police authorities from circumventing the requirements of the fourth amendment by directing a third party to perform a search that would be improper if the police did it themselves. *See United States v. West,* 453 F.2d 1351, 1356 (3d Cir.1972).

The defendant concedes that the *Miranda* rule is applicable only to custodial interrogations conducted by state agencies, but insists that Ragland was a *de facto* agent of the Colorado Springs Police Department. *Cf. United States v. Emery,* 591 F.2d 1266, 1267–68 (9th Cir.1978) (statements of suspect while under interrogation by Mexican officials were inadmissible where evidence established a "joint venture" between Mexican and United States law enforcement authorities).

Ragland's past law enforcement experience and his personal association with members of the police department in Colorado Springs does not cause him to be a police agent. Ragland apprehended and interrogated Lopez and Chastain as a security guard at the hospital. The record reveals that Ragland received no compensation or remuneration from any public agency, nor did Ragland act at the direction of the Colorado Springs Police Department. The fact that Ragland contacted police officers after he apprehended the defendant and Lopez is not sufficient to make him an agent of the police department. The statements made to Ragland were properly admitted into evidence.

Accordingly, the defendant's conviction is affirmed.