The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Ricardo F. GURULE, Defendant–Appellant.

No. 94CA1613.

Colorado Court of Appeals,

Div. II.

March 21, 1996.

Rehearing Denied April 25, 1996.

Certiorari Denied Oct. 15, 1996.

** Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3), and § 24–51–1105, C.R.S. (1995 Cum.Supp.).

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor Gener-

al, Susan J. Schneider, Assistant Attorney General, Denver, for Plaintiff–Appellee.

David F. Vela, Colorado State Public Defender, Katherine Brien, Deputy State Public Defender, Denver, for Defendant–Appellant.

Opinion by Judge HUME.

Defendant, Ricardo F. Gurule, appeals the judgment of conviction for possession of burglary tools entered upon jury verdicts finding him guilty of that crime and the additional offense of misdemeanor theft. We affirm.

A grocery store manager observed defendant as he picked up a grocery basket, walked to a cigarette display, put packages of cigarettes under a newspaper in his basket, and continued his shopping. He had followed this routine regularly for the prior three to four weeks. This day, the manager approached defendant as he left the store after paying for only a loaf of bread. Upon being questioned, defendant removed 27 packs of cigarettes from a "pouch" concealed under his clothing.

The "pouch," made of a pair of bib overalls from which the bottom portion had been removed, was designed to fit under defendant's clothing. A pocket was sewn into the top part of the cut-off overalls. The straps of the overalls were designed to fit around the wearer's neck and other straps were attached which tied around the waist.

## I.

Defendant contends that the "pouch" used to conceal the items he took from the store was not a burglary tool as such is defined in § 18–4–205, C.R.S. (1986 Repl.Vol. 8B). We disagree.

Section 18–4–205 provides:

[A] person commits possession of burglary tools if he possesses any explosive, tool, instrument, or other article adapted, designed, or commonly used for committing or facilitating the commission of an offense involving forcible entry into premises or theft by a physical taking, and intends to use the thing possessed, or knows that some person intends to use the thing possessed, in the commission of such an offense.

The broad definition of "burglary tools" reflects the General Assembly's recognition that the choice of tool is limited only by a person's imagination and ingenuity. *People v. Chastain*, 733 P.2d 1206 (Colo.1987).

■ Here, by the various alterations defendant effected to the overalls, he specifically designed and adapted them to a use other than their ordinary purpose. Thus, we conclude that the "pouch," designed and used by defendant for the purpose of facilitating a theft by a physical taking, is a burglary tool as defined by § 18–4–205.

## II.

Defendant next contends that § 18–4–205 is unconstitutionally vague, arguing that "theft by a physical taking" is not specifically defined within the statute. Further, defendant contends that the statute is overbroad in that it would criminalize the innocent conduct of wearing clothing and carrying shopping bags or similar items. We do not agree with either contention.

■ A statute is presumed to be constitutional, and a party asserting the contrary assumes the burden of establishing such assertion beyond a reasonable doubt. *People in re R.M.D.*, 829 P.2d 852 (Colo.1992).

■ If the language of a statute is plain and its meaning is clear, then it must be applied as written. *Heagney v. Schneider*, 677 P.2d 446 (Colo.App.1984). The words and phrases of a statute must be read in context and accorded their plain and ordinary meaning. *Bertrand v. Board of County Commissioners*, 872 P.2d 223 (Colo.1994).

■ The General Assembly is not required to define specifically the readily comprehensible and everyday terms it uses. Nor is it unfair that one who deliberately goes perilously close to an area of proscribed conduct takes the risk that he or she may cross the line. *People v. Blue*, 190 Colo. 95, 544 P.2d 385 (1975).

■ A statute may be void for vagueness if it fails to provide fair notice of prohibited conduct to persons of ordinary intelli-

gence. *People v. Chastain, supra.* A statute is overbroad only if it inhibits constitutionally protected fundamental rights or criminalizes innocent conduct. *People v. Stevenson,* 881 P.2d 383 (Colo.App.1994).

■ Pursuant to § 18–4–401(6), C.R.S. (1986 Repl.Vol. 8B), to charge a person with the crime of theft, it is sufficient to allege an unlawful taking. "Physical taking" merely clarifies which of the possible methods of effecting an unlawful taking is addressed by § 18–4–205, that is, the actual taking of an item as opposed to gaining control over it by fraud or deception. According the words used in § 18–4–205 their plain meaning, the statute sufficiently defines the proscribed behavior, and thus, it is not unconstitutionally vague.

Defendant names no fundamental right inhibited by this statute. Nor is innocent conduct criminalized. Mere possession of an item does not implicate the statute. The possession of a designed, adapted, or commonly used tool or other article must be accompanied by an intent to commit a burglary or theft by a physical taking. *People v. Chastain, supra.*

■ Here, defendant specifically adapted the overalls and then used them for the sole purpose of facilitating a physical taking. Both possession and intent were present. Accordingly, we conclude that, under the circumstances here, the statute prohibiting possession of burglary tools is neither vague nor overbroad.

### III.

Defendant also contends that § 18–4–205 violates equal protection of the law in that it imposes a more severe penalty for possession of a burglary tool than for the theft it was used to commit. We reject that contention.

■ Equal protection prohibits the imposition of different sanctions to punish identical criminal conduct. *People v. Czemerynski,* 786 P.2d 1100 (Colo.1990). However, the threshold question to any equal protection challenge is whether the persons allegedly subject to disparate treatment are in fact similarly situated. *People v. Black,* 915 P.2d 1257 (Colo. 1996)(persons who commit different crimes are not similarly situated).

■ If two offenses are readily distinguishable on the basis of their elements and the classification of those offenses is rationally based on the conduct proscribed, then equal protection is not violated when disparate penalties are imposed. *People v. Montoya,* 196 Colo. 111, 582 P.2d 673 (1978).

■ According to § 18–4–104, C.R.S. (1986 Repl.Vol. 8B), theft is committed by an unlawful taking with the intent to deprive a person of an item of value permanently. Section 18–4–205 prohibits the possession of a tool or article with the intent to commit or facilitate a taking or burglary. A facial examination of the two statutes clearly shows that they do not describe identical conduct. Defendant does not contend that disparate punishment was imposed for offenses that are substantially similar. Hence, we conclude that the conduct proscribed by § 18–4–205 is sufficiently distinguishable from that prohibited by § 18–4–104 to withstand defendant's equal protection challenge.

### IV.

We find no merit to defendant's final contention that he did not voluntarily, knowingly, and intelligently waive his right to testify as a result of the trial court's failure to advise him adequately of the consequences of his testifying.

■ The constitutional right to testify is so fundamental that procedural safeguards are necessary to ensure that a defendant understands the significance of its waiver. *People v. Curtis,* 681 P.2d 504 (Colo.1984). Although *Curtis* did not prescribe an exact litany for a trial court to repeat, the record must show that a defendant was properly advised and that the right to testify was voluntarily, knowingly, and intelligently waived. *People v. Chavez,* 853 P.2d 1149 (Colo.1993).

■ Here, the trial court advised defendant that the jury would be given an instruction limiting the use of evidence of prior felony convictions to determinations of his

credibility. The court then went on to say "[t]hey can decide that in deciding whether you're a bad guy." Defendant argues that this sentence chilled his decision to testify by creating a perception that the jurors could use their knowledge of his prior felony convictions in determining his guilt or innocence.

However, the court also read the entire jury instruction concerning the limited use of evidence of prior felony convictions as the jury would hear it before asking for defendant's decision. Thus, the court's advisement, as a whole, adequately apprised defendant of the consequences regarding his decision to testify. Hence, we conclude that his waiver of the right to testify was knowing, intelligent, voluntary, and valid.

The judgment is affirmed.

CRISWELL and JONES, JJ., concur.